## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **NO. 17-52300-rbk** |
| **STEVEN BRICE WIBRACHT AND** | § | |
| **ERIN MICHELLE WIBRACHT** | § | |
| | § | |
| **DEBTORS** | § | **CHAPTER 7** |
| | § | |
| | § | |
| **TRAVELERS CASUALTY AND** | § | |
| **SURETY COMPANY OF AMERICA** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **V.** | § | **ADV. NO. 18-05203-rbk** |
| | § | |
| **STEVEN BRICE WIBRACHT AND** | § | |
| **ERIN MICHELLE WIBRACHT** | § | |
| | § | |
| **DEFENDANTS** | § | |

### DEFENDANTS' STEVEN BRICE WIBRACHT AND ERIN MICHELLE WIBRACHT'S ORIGINAL COUNTERCLAIM

## TO THE HONORABLE RONALD B. KING, CHIEF US BANKRUPTCY JUDGE:

Steven Brice Wibracht and Erin Michelle Wibracht, Defendants, respectfully represent:

### *Jurisdiction*

1.     This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§105, 157, 1334 and 2201-2202 and 11 U.S.C. §§502, 522, 506, 544, 553, and the laws of the State of Texas.

### *Nature of the Counterclaim*

2.     The Plaintiff, Travelers Casualty and Surety Company of America (hereinafter referred to as "Travelers"), a bonding company, filed its complaint herein objecting to the Defendant/Debtors discharge. Its standing to bring the action is predicated upon a bond indemnity agreement (GAI) and rider thereto. Travelers has

filed a secured proof of claim #18 on March 14, 2018, in the amount of $12,561,301.08. It asserts a blanket lien on personal property. The documentation attached to the claim asserts a lien on all "assets and rights of indemnitors". This is so overly broad and overreaching as to include a lien on all of the debtors' real and personal property including their exempt property such as their homestead and vehicles in contravention of law. The Defendants assert that the Travelers rider at issue was procured through fraud and/or misrepresentation and is invalid. The defendant debtors dispute the existence, validity, enforceablity and secured nature of the alleged debt to Travelers as asserted in its Proof of Claim which must be contested through an objection to claim by adversary proceeding under Rule 7001 of the Bankruptcy Rules of Procedure. If the Court sustains such objection then Travelers lacks standing to bring the instant objection to discharge against the debtor defendants.

### Parties

3.     The Counter-Plaintiffs are Steven Wibracht and Erin Michelle Wibracht. They are the Debtors in this proceeding. They are hereby referred to as "Defendants".

4.     The Counter-Defendant Travelers Casualty and Surety Company of America (Travelers), may be served with summons by serving its attorney of record Mr. Thomas Rice, 2161 N.W. Military Highway #400, San Antonio, Texas 78213.

### Background

5.     Steven Wibracht worked for a San Antonio, Texas construction company known as Mapco, Inc. His employment with Mapco, Inc. started in approximately 2006.

6.     On or about July 26, 2012, Steven Wibracht purchased a 10% minority interest in Mapco, Inc. Mapco, Inc's Amended Certificate of Formation was filed with

the Texas Secretary of State on August 30, 2012, to reflect such ownership interest. He also purchased a 2.5% interest in WPS Group, LLC d/b/a Federal Management Solutions.

7.     He then worked for Federal Management Solutions which was a consulting firm which performed consulting services of Mapco, Inc. and others.

8.     Travelers demanded that Steven Wibracht as a minority interest owner in Mapco., Inc. and his spouse to sign an indemnity agreement for future surety bonds issued to Mapco, Inc. for future construction projects.

9.     In connection therewith, Steven Wibracht at the request of Travelers managing director, Terry W. Nielsen, was told to come to Mr. Nielsen's office at 9601 MacAllister Freeway, San Antonio, Texas to sign documents.

10.     On or about April 10, 2013, Mr. Nielsen gave Mr. Wibracht two signature pages for he and his wife Erin to sign. Mr. Wibracht signed the signature page, with no attachments, in the presence of Mr. Nielsen and took the two pages home to his wife to sign. The second signature page contained a place for Mrs. Wibracht to sign. Mrs. Wibracht signed the signature page without meeting or speaking with Mr. Nielsen or receiving any documents from him. Mr. Wibracht then took the two signed pages to work at Mapco, Inc. which two pages were then transmitted to Mr. Nielsen after a notary who worked at Mapco, Inc. had notarized the two pages after they were signed. The Mapco notary knew both Mr. and Mrs. Wibracht and was familiar with their signatures. She did not see them actually sign the two signature pages which had nothing else attached to them, but notarized the signatures because she knew them to be authentic and worked at Mapco, Inc.

11.     When Mr. Nielsen gave Steven Wibracht the two signature pages to sign he explained to him that he and his wife's signatures were required by Travelers on

3

an indemnity agreement since they were now owners of Mapco. Mr. Wibracht was further told by Mr. Nielsen that he and his wife needed to sign an indemnity agreement for future surety bonds issued by Travelers for Mapco jobs.

12.    Mr. Nielsen never gave Mr. or Mrs. Wibracht a copy of the 2008 Travelers/Mapco General Indemnity Agreement or any rider thereto.    Neither Travelers nor its agents provided Mr. or Mrs. Wibracht with copies of such documents.

13.    The Wibrachts did not know the nature and extent of the indemnity obligations which they were to agree by signing the signature pages supplied by Mr. Nielsen as nothing was attached.  The Travelers' proof of claim (Claim#18 part 2 pages 75- 78) contains a rider which contains their signature.

14.    Such rider does not contain the written acknowledgment of receipt of the rider  and consent to execution by Travelers or its managing director, Terry W. Nielsen.

15.    Upon information and belief, Mr. Nielsen's signatures of acknowledgment and receipt  appear on all other riders as to the other defendants in the pending U. S. District Court case.

16.    This is but another indication of the "irregularity" of alleged rider at issue. It is also some evidence or indication of a badge of fraud by Travelers.  It also raises the issue "why is this rider different from all other Travelers' riders?"

17.    The Defendants had no meeting of the minds as to the material terms of either the rider at issue or the GAI as they were never shown such documents prior to or contemporaneous with their signing of the two signature pages which were later attached to the rider by Travelers without their knowledge or consent.

18.    Furthermore,  there  was  a  lack  of  consideration  for  the  extreme

4

undisclosed potential liability to Travelers of almost 1 billion dollars (according to Travelers).

19.    During the approximately 90 or so days during which the rider might have been in effect, which the Defendants dispute, they did not have the opportunity to derive any benefit from the rider, or thereafter.

20.    The rider, if effective, is unconscionable and is otherwise unenforceable.

21.    Nevertheless, the first page of the rider was not attached to the signature pages when Defendants signed them.  Defendants did not see the first page of the rider until they were sued in United States District Court for breach of the indemnity agreement made the basis of the Travelers's Proof of Claim which agreement they also had not previously seen and to which they had not agreed.

22.    On or about July 9, 2013, Steven Wibracht left his employment with Mapco, Inc./Federal Management Solutions.   He was terminated from such employment after voicing his disagreement with company management decisions. He sold his interest in Mapco, Inc. to WPS Group, LLC. This termination and interest sale was approximately ninety (90) days after he and his wife signed the two signature pages which Travelers later attached to the rider made the basis of this lawsuit without their knowledge or consent.  Such termination is reflected in the Second Amendment to First Amended and Restated Company Agreement of WPS Group, LLC, effective August 29, 2013.

23.    Upon information and belief, Travelers and its agent Time Insurance, became aware and received copies of termination and transfer of interest and related documents  in July, August or September, 2013.

24.    Travelers knowing that Steven Wibracht no longer owned an interest in Mapco, Inc. and no longer worked for the company, filed a Financing Statement bearing his name and the name of his wife, with the Texas Secretary of State listing Travelers as a secured creditor.  This was without Defendants' knowledge or consent and is in breach of the parties' agreement, if any.  It is also a fraud by Travelers on the Defendants.

25.    The Travelers rider at issue makes reference to the GAI.  The GAI provides in paragraph 13 thereof, for Travelers to release indemnitors from future liability by advising Travelers of their cessation of ownership in the company.  The release according to such paragraph shall take effect 30 days after Travelers receives such notice.

26.    The defendants' liability, if any, under the disputed Rider and GAI to Travelers terminated 30 days after Travelers received notice which is approximately August, September or October, 2013.

27.    Nevertheless, unknown to the Defendants, Travelers continued to consider them liable for indemnity for Travelers bonds issued thereafter.

28.    This represents a breach of the parties' agreement, if any.

29.    The Travelers Proof of claim asserts that when the Wibrachts signed the rider they became liable for all past and future surety bond indemnity obligations which total almost one billion dollars most of which were for companies in which neither Mr. or Mrs. Wibracht owned any interest or had any control such as Blackhawk Ventures, LLC and Jamco Ventures, LLC.

30.    Travelers has represented to the U.S. District Court in case number 5:15 CV 0200 DAE, U. S. District Court, W.D. Texas, San Antonio Division (D.Ct. ECF

6

#268-13, filed 4/30/18) that over $14,000,000.00 of the bond losses were related to Blackhawk Ventures, LLC and Jamco Ventures, LLC and Core Logistics. A true copy of such document is attached hereto marked as Exhibit "A" and is incorporated by reference herein.

31.    On July 9, 2013, Steven Wibracht was terminated as an employee of Mapco, Inc. and FMS by its majority shareholder, Michael Padron.

32.    Steven Wibracht and Mapco and FMS signed a separation agreement on August 29, 2013. The document provided that Steven Wibracht and Erin Wibracht were to be released from any and all indemnity obligations to Travelers.

33.    At or about such time, Travelers and its agent Time Insurance were furnished copies of such separation agreement which put them on notice that Steven Wibracht and Erin Wibracht were terminating any future Travelers bond indemnity obligations.

34.    Nevertheless, Travelers, knowing that the Wibrachts had terminated their indemnity obligations to Travelers, continued to hold them liable not only for future (post separation agreement) Mapco, FMS bonded projects but also for indemnity for future bonded projects for Blackhawk Ventures, LLC and Jamco Ventures, LLC which was beyond the scope of what the Travelers managing agent, Mr. Terry W. Nielsen had told Mr. Wibracht to induce him to sign the signature page and have his wife sign a similar signature page with no indemnity agreement or rider attached.

35.    Had Mr. Nielsen on behalf of Travelers made full disclosure of the material terms of the rider to which their signatures were attached and that they might be liable for almost a billion dollars worth of indemnity claims and were undertaking indemnity obligations for other companies for which they did not work and in which

they had no interest, they never would have signed the signature pages or agreed in principal to indemnify Travelers. This was a misrepresentation by omission and actual false representation and/or fraud by Travelers which induced the Wibrachts to sign the signature pages with no documents attached. They relied upon Mr. Nielsen's representations to their detriment because Mr. Wibracht trusted him and believed his representations which Mr. Nielsen knew or should have known were false when he made them and expected the Wibrachts to rely upon the same which they did to their detriment and damage.

36. On March 17, 2015, Travelers filed a lawsuit against Michael Padron, the Debtor/Defendants herein and many others in the United States District Court for the Western District of Texas, San Antonio Division in case number 5:15 CV 200 DAE. The lawsuit seeks to recover damages under the 2008 GAI and various indemnity riders including the disputed rider to which the Defendants' signatures were attached.

37. That lawsuit was stayed as to the Defendants when they filed the underlying Chapter 7 proceeding herein on September 30, 2017.

38. Travelers filed a secured Proof of Claim #18 on March 14, 2018 in the amount of $12,561,301.08.

39. A true and correct copy of Travelers' proof of claim is attached hereto marked as Exhibit "B" (with only partial exhibits due to their length) but which is incorporated by reference herein in its entirety).

40. Travelers is strictly (vicariously) as well as jointly and severally liable for the misconduct and resulting damages of its managers, directors and agents (and/or independent contractors). *See MBank El Paso, N. A. v. Sanchez,* 836 S.W.2d 151 (Tex. 1992).

8

41.    The Defendants have sustained damages by virtue of the Plaintiff's misconduct set forth above.

42.    The circumstances of the Plaintiff's misconduct described above indicates that it was willful and/or malicious or made with reckless disregard for the Defendants' rights entitling them to a claim for punitive damages.

### Grounds for Relief: Denial of Travelers' Claim

43.    The Defendants incorporate by reference the allegations and facts set forth above.

44.    The Defendants have claims against Travelers. Because the Defendants have claims against Plaintiff, Travelers, Travelers' secured claim (described above) must be disallowed pursuant to 11 U.S.C. § 502(d). Because of its misconduct its lien should be avoided and debt cancelled. To the extent not cancelled the Defendants are entitled to setoff or recoupment of their claims and damages against Travelers pursuant to 11 U.S.C. §553. The claim should be otherwise determined to be unsecured pursuant to 11 U.S.C. §§506, 544 and 28 U.S.C. §§2201-2202.

### Grounds for Relief: Further Grounds for Denial of Claim and for Other Relief

45.    The Defendants incorporate by reference the allegations and facts set forth above.

46.    The Defendants object to the secured Proof of Claim #18 filed by Travelers (claimant) on March 14, 2018 in the amount of $12,561,301.08, for cause as set forth herein, including but not limited to the following:

(a)    The claim, is based upon a General Indemnity Agreement (GAI) dated September 16, 2008, which was not signed by the Defendants. The terms of that agreement were not disclosed to the Defendants and copies not provided to them prior to them being sued in U. S. District Court by Travelers. Defendants did not agree to the terms of such GAI.

(b)    The claim is also based on Defendants' alleged execution of a rider to such GAI dated April 10, 2013. The execution of rider was procured through misrepresentation and fraud of Travelers. The Defendants signed two signature pages without the rider or any language describing its contents. The signed signature pages were later delivered to a notary, Roxanne Hensley, who notarized their signatures in their absence without any attachments. The notary has confirmed this by her attached Declaration marked as Exhibit "C" which is incorporated by reference herein. A contract procured through fraud is unenforceable and is null and void. Such is the case here.

(c)    Mr. Terry W. Nielsen, managing director of Travelers, met with Defendant Steven Wibracht and several other persons in his office (The Travelers Building located at 9601 MacAllister Freeway, San Antonio, Texas) on or about April 10, 2013. Defendant, Erin Michelle Wibracht, wife of Defendant, Steven Wibracht was not present. Mr. Nielsen gave Defendant, Steven Wibracht the two signature pages for he and his wife to sign without any attachments after telling him that since he and his wife were now part owners in Mapco, that they were required to sign an indemnity agreement rider to cover new surety bonds which Travelers would in the future provide to Mapco. He never told Steven Wibracht or his wife the terms of the rider which Travelers later apparently attached to the two signature pages signed by he and his wife or the terms of the GAI signed by others years earlier. Mr. Nielsen did not disclose to the Defendants that by signing the rider signature pages that they might be liable to Travelers for almost 1 Billion Dollars in potential claims or that they were giving Travelers a security interest or lien on any of their property. Mr. Nielsen did not tell either defendant that by signing the signature pages they would be liable for all past bonds covered by the GAI no matter how long before. Mr. Nielsen did not tell either defendant that by signing the rider signature pages that they would be liable to Travelers for indemnity for past, present and future surety bonds issued by Travelers to third parties unrelated to Mapco such as Blackhawk Ventures, LLC. Mr. Steven Wibracht related what Mr. Nielsen had told him about the indemnity and the signature requirement to his wife, Erin Wibracht, before he had her sign the signature page with no documents attached.

(d)    When Mr. Terry W. Nielsen, managing director of Travelers made the aforesaid representations to Defendant Steven Wibracht, he knew they were false or should have known they were false but made the representations with reckless indifference or reckless disregard for the Defendants' rights. He expected both Defendants to rely upon them which they did to their detriment and damage. Mr. Nielsen's representations and misrepresentations were made in the scope and course and with the authority of his employer Travelers which is bound by his representations through respondeat superior. Travelers is accordingly bound by his representations and misrepresentations in this

regard.

(e)     There is no contract to support the Travelers claim as some or all of the elements of a contract are missing. There was no meeting of the minds or mutual assent by the Defendants on all of the material elements of an indemnity agreement when they signed the two signature pages with no agreement stating any terms was attached.

(f)     The claim is filed as secured. The Defendants did not sign a security agreement or agree to pledge any of their property to Travelers. The rider does not contain a security agreement. On January 27, 2015, Travelers filed a UCC financing statement form with the Texas Secretary of State asserting a lien on the Defendants' property. The filing number is 15-0002823506. The UCC financing statement was filed without the Defendants knowledge or consent. Travelers attached a copy of the Defendants' signature pages with a rider in favor of Travelers, previously unseen by them to the financing statement. That rider is unenforceable as it was obtained by fraud in the inducement, fraud and by misrepresentation. The financing statement and any alleged liens claimed upon the Defendants' property are unauthorized and null and void for the same reasons. Such liens are unenforceable as to their exempt homestead and personal property under Art. 16, Section 50, of the Texas Constitution and the Sections 41 and 42 of the Texas Property Code as well as the Texas Uniform Commercial Code.

(g)     To the extent the rider at issue is found to be enforceable, the Defendants contend that Travelers' breached its GAI agreement incorporated in the rider   by not releasing the Defendants from indemnity obligations on future bonds  after Travelers received written notice. By failing to release the defendants from future bond liability, Travelers breached its own contract and is barred from claiming thereunder. The Defendants have been damaged by such breach and are entitled to recover damages and attorney's fees of and from Travelers pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.

(h)     In addition to its principal amount, the claim includes attorney's fees and other charges of over $2,000,000.00, which the claimant has failed to itemize and file with its proof of claim as required by Bankruptcy Rule of Procedure 3001 (c)(2)(A).

(I)     The Defendants/Debtors dispute the debt. They and their estate hold the claims against the claimant set forth above which warrant the denial of the claim under 11 U.S.C. §502(d) and/or offset under §553. Accordingly, they do not owe the claimant and its claims should be disallowed and lien ordered released and debt satisfied.

(j)     The claim is unenforceable against the Defendants/Debtors and their estate under applicable law pursuant to 11 U.S.C. §502(b)(1).

(k)     The claim is excessive, fraudulent, and constitutes a false statement made under penalty or perjury.

(l)     The claim represents an excessive demand warranting the denial of pre and post-judgment attorney's fees.

(m)     Upon information and belief the underlying bonds are unenforceable and may not be the subject of indemnity due to charging excessive premiums and the payment in the form of rebates to unlicensed persons by Travelers' agent of record Time Insurance and by improper payments of dividends checks to third parties who diverted them from the rightful owners.

(n)     The Defendants received no consideration for the issuance of surety bonds by Travelers to companies other than the one which they briefly owned an interest in, Mapco, Inc. The issuance of the bonds made the basis of the claim did not benefit the Defendants.

47.     Travelers claim is for a breach of an indemnity agreement. Under Texas law, a breach of indemnity agreement claim has five elements: (1) a contractual indemnity agreement exists; (2) the agreement obligates defendants to indemnify the surety if claims are made on the bonds issued; (3) claims were made on the bonds issued; (4) all conditions precedent for recovery have occurred, been performed, waived or excused; and (5) the surety has been damaged. *Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 719 (5th Cir. 1995).*

48.     Each of the five elements is missing in this case. There is no contractual indemnity agreement because there was no meeting of the minds or mutual assent on its material terms.

49.     The Defendants merely signed two signature pages in reliance upon what the Travelers' representative (Mr. Nielsen) told Mr. Wibracht that they were agreeing to. That is by signing the signature pages they were agreeing to indemnify

Travelers for new surety bonds issued by Travelers for Mapco, Inc. the company in which they had just acquired a minority interest. There was no agreement to provide collateral. There was no agreement to indemnify Travelers for existing surety bonds. There was no agreement to indemnify Travelers for any of the bond claims made the basis of the proof of claim. There was no agreement to indemnify Travelers for damages for defaulted surety bonds on projects for companies other than Mapco's jobs such as those by jobs by Blackhawk, Jamco or Core. There was no agreement to be bound by the terms of the 2008 General Indemnity Agreement whose terms were not disclosed to the Wibrachts. There was no authorization given to file a Financing Statement with the Texas Secretary of State. All conditions precedent for Travelers to bring the claim have not occurred.

50.     The bond claims made the basis of Travelers' claim as set forth in the loss summary which Travelers filed in the U.S. District Court case No. 5:15 cv 00200 DAE on April 30, 2018, (Ecf. #268-13), *the month after it filed its proof of claim* at issue, indicates that the indemnity claim arises from bonds provided for Blackhawk Ventures, LLC, Jamco, and one for Core Constructors for a total of $14,834,408.35 as set forth in the attached Exhibit "A".

51.     By such filing in the U. S. District Court (Ecf #268-13) the Plaintiff, Travelers has judicially admitted that none of the alleged contractual indemnity claims at issue were for Mapco, Inc.

52.     The Defendants contend that such claims and losses, if any, by Travelers were outside the scope of their agreement to indemnify Travelers for losses due to future Mapco, Inc. Travelers' surety bonds. Travelers did not sustain any losses for indemnity claims covered by what the Defendants intended by signing their names to

13

the two signature pages at issue to which Travelers later attached the rider at issue which they had never before seen or agreed.

53.     In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *Bendalin v. Delgado,* 406 S.W.2d 897, 899 (Tex.1966); *University Nat'l Bank v. Ernst & Whinney, 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ).* By signing two signature pages with nothing attached there is clearly no definite agreement between the parties specifying what the Defendants agreed to undertake when they signed those two pages.

54.     The material terms of the contract must be agreed upon before a court can enforce the contract. Where an essential term is open for future negotiation, there is no binding contract. *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 644 (Tex.App.—Corpus Christi 1984, no writ) and *T. O. Stanley Boot Co., Inc. v. The Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992).* Such is the case at bar. Since the material terms were not agreed, the indemnity agreement is void for vagueness and is unenforceable. Claims under such invalid agreement such as the Proof of Claim at issue are also unenforceable and should be denied.

55.     Texas law provides that the omission or failure of an essential element of a contract vitiates the whole. *Mesa Petroleum Co. v. Coniglio,* 629 F.2d 1022, 1026 (5th Cir.1980); *Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147, 150 (Tex.Comm.App.1937, opinion adopted); Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 644 (Tex.App.1984, no writ).

56.     Since the alleged indemnity agreement between the parties lacks the essential elements set forth above, the absence of such elements vitiates the contract

14

as a whole, if one ever existed.

57.    A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. See *Associated Indemnity Corporation v. CAT Contracting, Inc.;Trevino v. Allstate Ins. Co., 651 S.W.2d 8, 11 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); City of San Antonio v. Guido Bros. Const. Co., 460 S.W.2d 155, 162–63* (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.).  Here Travelers has not met its burden.

58.    Defendants contend that they did not know they were signing a contract, and so they lacked the mutual assent required to form a valid contract.

59.    Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, 960 S.W.2d 41, 46 (Tex. 1998).* This type of fraud, also called fraudulent inducement, has the same elements as a fraud claim, with the added requirement that the fraud relate to an agreement between the parties. *Haase v. Glazner, 62 S.W.3d 795, 798–99 (Tex. 2001).*

60.    The elements of fraud are a material misrepresentation that was false, was either known to be false when made or was made without knowledge of its truth, was intended to be acted upon, was relied upon, and caused injury." *Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex. 1994) (per curiam).*

61.    When Mr. Nielsen told Defendant Wibracht that he and his wife would, by signing the signature pages he presented to Mr. Wibracht in his office on or about April 10, 2013, be agreeing to indemnify Travelers for future Travelers bonds issued for Mapco, Inc. jobs, such representation was false. He on behalf of Travelers knew the same to be both material and false and expected the Wibrachts to rely upon such

15

misrepresentation. He expected the Wibrachts to rely upon such representation, which they did in signing the signature pages to be returned to Travelers to their detriment and damage. They are now being sued for $12,561,301.08 (the claim), as a result of Travelers fraud and have incurred significant attorneys' fees and other damages as a proximate result of such fraud.

62. The Texas Supreme Court has clearly ruled that an excessive demand warrants the denial of attorney's fees and interest. *Findlay v. Cave*, 611 S.W.2d 57 (Tex. 1981). The dispositive inquiry for determining whether a demand is excessive is whether the claimant acted unreasonably or in bad faith. *Allstate Ins. Co. v. Lincoln*, 976 S.W.2d 873, 876 (Tex.App.-Waco 1998, no pet.). Application of this rule is limited to situations where the creditor refuses a tender of the amount actually due or indicates clearly to the debtor that such a tender would be refused. *Findlay*, at 58, *Id*. The claimant clearly has made an excessive demand which warrants the denial of all attorney's fees and interest. There is no debt.

63. The Defendants request that the Court issue a declaratory judgment under 28 U.S.C. §§2201-2202 that the contract at issue, if any is null and void, and/or was procured by the fraud of the plaintiff.

64. They also request a declaratory judgment that pursuant and relief under 11 U.S.C. §506 that the Travelers' claim is unsecured as to them and that any alleged lien on their exempt homestead located at 536 E. Borgfield Road, San Antonio, Texas and their exempt personal property as allowed by prior orders of this Court be avoided pursuant to 11 U.S.C. §522(f) as the same impairs their allowed claim of exemptions by the amount of Travelers $12,561,301.08 claim at issue.

65.    The claim does not comply with the mandatory requirements of Rule 3001 of the Bankruptcy Rules of Procedure including but not limited to a full itemization of all charges claimed and proof of perfection of the claimant's alleged security interest and the underlying security agreement.

66.    Because the claimant failed to provide the detailed breakdown of attorney's fees, fees and costs required by Bankruptcy Rule of Procedure 3001c, the Court should preclude Travelers from presenting the omitted information, in any form, as evidence in this adversary proceeding and award to the Defendants expenses and attorney's fees caused by the failure, including the cost of litigating their objections to Plaintiff's claims.

67.    The claim, due to its defects set forth above, is not entitled to prima facie validity.

68.    The claim should be disallowed pursuant to Local Court Rule 3007, Rule 3007 of the Bankruptcy Rules of Procedure and 11 U.S.C. §502(b).

69.    Upon information and belief the aforesaid conduct of the Plaintiff by and through its agents was willful and reprehensible. Accordingly, punitive as well as compensatory damages should be awarded to the Defendants of and from the Defendants.

70.    To the extent, if any, that this Court may lack jurisdiction to award relief for any of the claims set forth above, the damages caused by the Plaintiff's aforesaid misconduct should be offset and/are asserted in recoupment against the Proof of Claim at issue, filed by Travelers.

71.    To the extent that some of the claims asserted herein are within the purview of the Chapter 7 Trustee's avoidance powers or are property of their estate,

the Defendant debtors asserts derivative standing on behalf of their Chapter 7 Estate and seek recovery on behalf of such estate.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiff be cited to answer and appear herein and that upon final hearing, Defendants recover of and from the Plaintiff, their actual damages, declaratory judgment, lien avoidance, claim disallowance, punitive damages, attorney's fees and costs of court together with pre-judgment interest, and for such other and further relief to which the Defendants may be entitled.

Dated: 17 September, 2018.

Respectfully submitted,

LAW OFFICES OF MARTIN SEIDLER
One Elm Place, Suite 504
11107 Wurzbach Road
San Antonio, Texas 78230
Tel: (210) 694-0300
Fax: (210) 690-9886
Email: marty@seidlerlaw.com

By: /s/ Martin Seidler
    MARTIN SEIDLER, SBN 18000800
    ATTORNEY FOR DEFENDANT
    COUNTER-PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served by first class mail and/or email on this 17th day of September, 2018:

Jennifer Larkin Kneeland
WATT TIEDER HOFFAR & FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Email: jkneeland@watttieder.com

Thomas Rice
Randy Pulman
PULMAN, CAPPUCCIO, PULLEN
BENSON & JONES, LLP
2161 NW Military Hwy, Suite 400
San Antonio, Texas 78213
Email: trice@pulmanlaw.com
Email: rpulman@pulmanlaw.com

_____/s/_____
Martin Seidler

# Incurred Loss Summary Schedule (As of 03/31/2018)

| EXHIBIT BOND ID No.: | GENERAL PROJECT INFORMATION | | | | PAID CLAIMS & EXPENSES | | SUBROGATION | INCURRED LOSS |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | A Principal: | B Bond Date: | C Bond Number: | D Claim No(s): | E Bond Claims Paid (+) Interest: | F Expenses Incurred (+) Interest: | G Subrogation Applied to Loss | H Total Incurred (E) + (F) - (G) |
| 1 | Blackhawk Ventures, LLC | 03/22/2012 | 105744675 | T1303206 | $ 119,978.45 | $ 23,088.32 | $ - | $ 143,066.77 |
| 2 | Blackhawk Ventures, LLC | 03/26/2012 | 105744676 | T1303307 | $ 281,206.18 | $ 54,114.53 | $ - | $ 335,320.71 |
| 3 | Blackhawk, JAMCO A SDVOB | 04/04/2012 | 105744678 | T1401955 | $ 4,907,799.62 | $ 944,443.29 | $ 427,887.41 | $ 5,424,355.50 |
| 4 | Jamco Ventures, LLC | 08/09/2012 | 105744679 | T1312864 | $ 366,062.05 | $ 70,442.04 | $ - | $ 436,494.09 |
| 5 | Blackhawk Ventures, LLC | 09/27/2012 | 105841166 | T1406041 | $ 187,248.42 | $ 36,033.56 | $ 223,281.98 | 0.00 |
| 6 | Core Constructors | 12/20/2012 | 105868625 | T1317231 | $ 1,014,830.82 | $ 195,291.22 | | $ 1,210,122.04 |
| 7 | Blackhawk Ventures, LLC | 04/15/2013 | 105891378 | T1505989 | $ 71,716.43 | $ 13,800.91 | $ - | $ 85,517.34 |
| 8 | Blackhawk Ventures, LLC | 08/13/2013 | 105913053 | T1411614 | $ 2,495,018.05 | $ 480,134.32 | $ - | $ 2,975,152.37 |
| 9 | Blackhawk Ventures, LLC | 03/25/2014 | 106060038 | T1609975 | $ 91,586.24 | $ 46,597.77 | $ - | $ 138,184.01 |
| 10 | Blackhawk Ventures, LLC | 04/03/2014 | 106082376 | T1610625 | $ 68,308.38 | $ 34,754.32 | $ - | $ 103,062.70 |
| 11 | Blackhawk Ventures, LLC | 05/16/2014 | 106097283 | T1610344 | $ 98,136.82 | $ 49,930.61 | $ - | $ 148,067.43 |
| 12 | Blackhawk Ventures, LLC | 06/04/2014 | 106097300 | T1610353 | $ 33,067.74 | $ 16,824.39 | $ - | $ 49,892.13 |
| 13 | Blackhawk Ventures, LLC | 08/12/2014 | 106147063 | T1610354 | $ 24,766.05 | $ 12,600.61 | $ - | $ 37,366.66 |
| 14 | Blackhawk Ventures, LLC | 08/29/2014 | 106147075 | T1610356 | $ 64,261.50 | $ 32,695.33 | $ - | $ 96,956.83 |
| 15 | Blackhawk Ventures, LLC | 09/23/2014 | 106162084 | T1509378 | $ 19,909.44 | $ 10,129.64 | $ - | $ 30,039.08 |
| 16 | Blackhawk Ventures, LLC | 09/26/2014 | 106162094 | T1610627 | $ 107,109.99 | $ 54,496.03 | $ - | $ 161,606.02 |
| 17 | Blackhawk Ventures, LLC | 10/01/2014 | 105356052 | T1613155 | $ 363,344.38 | $ 184,864.41 | $ - | $ 548,208.79 |
| 18 | Blackhawk Ventures, LLC | 10/01/2014 | 106162173 | T1608633 | $ 290,602.01 | $ 147,854.13 | $ - | $ 438,456.14 |
| 19 | Blackhawk Ventures, LLC | 10/23/2014 | 106162197 | T1610359 | $ 90,046.41 | $ 45,814.32 | $ - | $ 135,860.73 |
| 20 | Blackhawk Ventures, LLC | 01/08/2015 | 106162224 | T1611092 | $ 96,039.79 | $ 48,863.67 | $ - | $ 144,903.46 |
| 21 | Blackhawk Ventures, LLC | 02/10/2015 | 106162233 | T1611352 | $ 50,006.39 | $ 25,442.53 | $ - | $ 75,448.92 |
| 22 | Blackhawk Ventures, LLC | 02/13/2015 | 106162236 | T1607953 | $ 54,984.89 | $ 27,965.35 | $ - | $ 82,930.24 |
| 23 | Blackhawk Ventures, LLC | 03/03/2015 | 106162239 | T1612994 | $ 84,410.83 | $ 42,947.02 | $ - | $ 127,357.85 |
| 24 | Blackhawk Ventures, LLC | 03/20/2015 | 106162245 | T1610638 | $ 49,729.90 | $ 25,301.86 | $ - | $ 75,031.76 |
| 25 | Blackhawk Ventures, LLC | 04/06/2015 | 106162250 | T1610289 | $ 9,217.68 | $ 4,689.82 | $ - | $ 13,907.50 |
| 26 | Blackhawk Ventures, LLC | 04/07/2015 | 106162252 | T1509442 | $ 123,223.97 | $ 62,694.59 | $ - | $ 185,918.56 |
| 27 | Blackhawk Ventures, LLC | 04/07/2015 | 106162260 | T1610639 | $ 52,466.05 | $ 26,693.97 | $ - | $ 79,160.02 |
| 28 | Blackhawk Ventures, LLC | 04/07/2015 | 106162258 | T1610636 | $ 47,152.91 | $ 23,990.72 | $ - | $ 71,143.63 |
| 29 | Blackhawk Ventures, LLC | 04/07/2015 | 106162259 | T1605524 | $ 92,725.32 | $ 47,177.31 | $ - | $ 139,902.63 |
| 30 | Blackhawk Ventures, LLC | 05/12/2015 | 106162266 | T1612582 | $ 28,163.15 | $ 14,329.01 | $ - | $ 42,492.16 |
| 31 | Blackhawk Ventures, LLC | 05/22/2015 | 106162277 | T1604034 | $ 34,264.55 | $ 17,433.31 | $ - | $ 51,697.86 |
| 32 | Blackhawk Ventures, LLC | 05/29/2015 | 106162280 | T1607501 | $ 510,733.23 | $ 259,853.74 | $ - | $ 770,586.97 |
| 33 | Blackhawk Ventures, LLC | 05/29/2015 | 106162281 | T1603020 | $ 88,775.38 | $ 45,167.64 | $ - | $ 133,943.02 |
| 34 | Blackhawk Ventures, LLC | 08/24/2015 | 106162296 | T1610278 | $ 226,840.98 | $ 115,413.44 | $ - | $ 342,254.42 |
| | | | | | $ 12,243,704.00 | $ 3,241,873.74 | $ 651,169.39 | 14,834,408.35 |

Page 1 of 1

EXHIBIT 'A'

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>Steven Brice Wibracht</td></tr>
<tr><td>Debtor 2<br/>(Spouse, if filing)</td><td>Erin Michelle Wibracht</td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the: Western District of Texas</td></tr>
<tr><td>Case number</td><td>17-52300-rbk</td></tr>
</table>

**Official Form 410**

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Travelers Casualty and Surety Company of America
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

c/o Jennifer L. Kneeland, Watt, Tieder, Hoffar
Name

1765 Greensboro Station Place, Suite 1000
Number     Street

McLean                    VA          22102
City                      State       ZIP Code

Contact phone 703-749-1026

Contact email jkneeland@watttieder.com

Where should payments to the creditor be sent? (if different)

Name _____

Number     Street

City          State        ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on ____ / ____ / _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

---

EXHIBIT "B"

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

**6.** Do you have any number you use to identify the debtor?
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7.** How much is the claim?  $ _____ 12,561,301.08 .  Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached rider.

**9.** Is all or part of the claim secured?
☐ No
☑ Yes.  The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe:  See attached rider.

Basis for perfection:  UCC financing statement (see attached rider).
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $ ____ A blanket lien on all personal property.
Amount of the claim that is secured:  $  12,561,301.08
Amount of the claim that is unsecured:  $ _____ TBD  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $ ____ 12,561,301.08

Annual Interest Rate (when case was filed) 18.00 %
☑ Fixed
☐ Variable

**10.** Is this claim based on a lease?
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.  $ _____

**11.** Is this claim subject to a right of setoff?
☑ No
☐ Yes. Identify the property: _____

| | | Amount entitled to priority |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  03/14/2018
                  MM / DD / YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Timothy G. Snyder |
| | First name    Middle name    Last name |
| Title | Bond Claim Executive—Recovery Management Unit , Bond & Specialty |
| Company | Travelers Casualty and Surety Company of America |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 111 Schilling Road |
| | Number    Street |
| | Hunt Valley                              MD    21031 |
| | City                                     State    ZIP Code |
| Contact phone | 4433531850 |
| Email | tsnyder@travelers.com |

## RIDER TO PROOF OF CLAIM

### Statement of Claim

**A.**   **Basis for Claim**

    1.   The Indemnity Agreement

Steven B. Wibracht and Erin Wibracht (the "**Debtors**"), along with several dozen other individuals and corporate entities (collectively, the "**Indemnitors**"), are jointly and severally indebted to Travelers Casualty and Surety Company of America ("**Travelers**") pursuant to the Indemnity Agreement (defined below), and as more specifically described below.

On September 16, 2008, Blackhawk Ventures, LLC ("**Blackhawk**"), among other individuals and corporate entities, executed a General Agreement of Indemnity in favor of Travelers (the "**GAI**").

On September 30, 2010, Team JAMA executed an Additional Indemnitor Rider in connection with the GAI (the "**JAMA Rider**"). On March 14, 2011, Core Logistics Services, LLC d/b/a Core Constructors ("**Core**"), WPS Group, LLC d/b/a Federal Management Solutions, and Blackhawk executed an Additional Indemnitor Rider in connection with the GAI (the "**Core Rider**"). On January 3, 2013, Padron Enterprises, Inc. executed an Additional Indemnitor Rider in connection with the GAI (the "**Padron Rider**").

On April 10, 2013, the Debtors, James Brian Taylor, Fameeda Taylor, Raymond Jenkins, and Wendy Lee Jenkins executed an Additional Indemnitor Rider in connection with the GAI (the "**Wibracht Rider**"). The GAI, the JAMA Rider, the Core Rider, the Padron Rider, and the Wibracht Rider are collectively, the "**Indemnity Agreement**". A true and correct copy of the Indemnity Agreement is attached to the Proof of Claim as Exhibit 1, the terms which are incorporated as though fully set forth herein.

    2.   Traveler's Rights Under the Indemnity Agreement

The Wibracht Rider states that "[t]his Rider is hereby incorporated into, and forms a part of, the [GAI] … [and] [the Debtors] shall become an additional Indemnitor to the [GAI] bound by all of the terms and conditions of the [GAI]."

Paragraph 3 of the GAI — to which all of the Indemnitors are bound as noted above — provides as follows:

**Indemnification and Hold Harmless**:     Indemnitors shall exonerate, indemnify and save [Travelers] harmless from and against all Loss. An itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.    Amounts due to [Travelers] shall be payable upon demand.

The GAI defines "Loss" as:

All loss and expense of any kind or nature, including attorneys' and other professional fees which [Travelers] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [Travelers]'s: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

The GAI defines "Property" as:

Indemnitors' rights, title and interest, whether now held or hereafter acquired in: (a) any Contract or contract, including but not limited to subcontractors let; (b) any and all sums due or which may hereafter become due under any Contract or contract, and all damage claims and proceeds related thereto; (c) all rights arising under any surety bonds or insurance policies; and (d) any and all accounts receivable, letters of credit, documents of title, bills of lading, warehouse receipts, machinery, plants, equipment, tools, materials, supplies, inventory, vehicles, hardware, software, machine tools, fixtures, office equipment, books, records, designs, licenses, patents, intellectual property, as-builts, construction drawings and documents, and all electronically stored information.

Moreover, Paragraph 6 of the GAI provides that:

**Remedies:** In the event of a Default, Indemnitors assign, convey and transfer to [Travelers] all of their rights, title and interests in Property, and [Travelers] shall have a right in its sole discretion to: (a) take possession of the work under any Contract and to complete said Contract, or cause, or consent to, the completion thereof; (b) immediately take possession of Indemnitors' Property, and utilize the Property for the completion of the work under the Contracts without payment for such use; (c) assert or prosecute any right or

2

claim in the name of any Indemnitor and to settle any such right or claims as [Travelers] sees fit; (d) execute in the name of any Indemnitor, any instruments deemed necessary or desirable by [Travelers] to: (i) provide [Travelers] with title to assets, (ii) take immediate possession of Contract funds whether earned or unearned; (iii) collect such sums as may be due Indemnitors and to endorse in the name of Indemnitors, and (iv) collect on any negotiable instruments; (e) require any Obligee to withhold payment of Contract funds unless and until [Travelers] consents to its release; and/or (f) be subrogated to all the rights, remedies, properties, funds, securities and receivables relating to Indemnitors' Contracts or contracts and have the right to offset losses on any Contract or Bond against proceeds, funds, or property due from another Contract, bond or contract. Further, in the event of Default and upon demand Indemnitors shall direct that all payments, monies, and properties that are due or may become due on any Contract or contract be made payable to, and/or sent directly to, [Travelers], and shall issue whatever writing or notices as deemed necessary by [Travelers] to effectuate the default and/or termination of any Contract.

Additionally, Paragraph 9 of the GAI provides that:

**Trust Fund:** All payments due or received for or on account of any Contract, whether or not in the possession of any Indemnitors, shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which [Travelers] as beneficiary may be liable under any Bond. [Travelers] may open a trust account or accounts with a bank for the deposit of the trust funds. Upon demand, Indemnitors shall deposit therein all trust funds received. Withdrawals from such trust accounts shall require the express consent of [Travelers].

Further, Paragraph 12 of the GAI provides that:

**Security Interest:** As security for their obligations hereunder, Indemnitors hereby grant to [Travelers] a security interest in the following properties, assets and rights of Indemnitors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property, supporting obligations, any Contract or contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (the "Collateral"). This Agreement shall

3

for all purposes constitute a Security Agreement for the benefit of [Travelers] in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. Indemnitors hereby irrevocably authorize Company, without notice to any Indemnitor, in order to perfect the security interest granted herein, to file either (a) this Agreement or a copy or other reproduction of this Agreement; or (b) any initial financing statements or amendments thereto that indicate the Collateral as all assets of Indemnitors or words of similar effect, as being of an equal or lesser scope or with greater detail and that contain any other information relating to any Indemnitor required by Part 5 of Article 9 of the UCC for the jurisdiction where such financing statement or amendment is filed. [Travelers] may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of the Indemnitors under this Agreement.

In connection with the Indemnity Agreement, Travelers maintains a perfected UCC-1 Financing Statement No. 15-0002823506 filed with the Texas Secretary of State. A true and correct copy of the UCC-1 Financing Statement is attached to the Proof of Claim as Exhibit 2, the terms which are incorporated as though fully set forth herein.

In addition to its indemnification rights under the Indemnity Agreement, Travelers has equitable subrogation rights to the extent it has paid subcontractors and/or suppliers for work performed and/or materials supplied to the Bonded Projects.

3.    The Bonds and Bond Claims

Based upon the execution of the Indemnity Agreement, Travelers issued 1252 Payment and Performance Bonds (the "**Bonds**") from 2008 to 2016 on behalf of one or more of the Indemnitors for certain construction projects (the "**Bonded Projects**") for a total penal sum of $908,646,685.00(the "**Penal Sum**"). A true and correct list of the Bonds Travelers has issued under the Indemnity Agreement is attached to the Proof of Claim as Exhibit 3.

In 2014, Travelers began receiving claims against certain Bonds issued on behalf of one or more of the Indemnitors (the "**Bond Claims**"). Travelers has settled and/or paid several of the Bond Claims. Some of the Bond Claims are, however, as of March 13, 2018, currently in the claims and/or litigation process ("**Open Bond Claims**"). Accordingly, Travelers is incurring recoverable fees and expenses under the Bonds, in accordance with the Indemnity Agreement.

4

4.    Travelers's Equitable Subrogation Rights

To the extent Travelers undertook (or undertakes) completion and/or made payments under any of the Bonds, Travelers may possess an equitable interest superior to those of the Debtors to funds held by third parties on their behalf related to any sums due and owing under the Bonded Project contracts. *See generally Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962); *United States v. Munsey Trust Co.*, 332 U.S. 234 (1947). To dated, Travelers has made payments on the Bond Claims. Moreover, Travelers has and/or may in the future be subrogated to the rights of (and/or receive assignments from) other creditors who have and/or will file proofs of claim.

B.    **The Indemnity Lawsuit**

On March 17, 2015, Travelers filed a Complaint against the Debtors and several other Indemnitors initiating the case *Travelers Cas. and Sur. Co. of Am. v. Michael A. Padron, et al.* (Case No. 5:15-cv-200-DAE) in the United States District Court for the Western District of Texas (the "**Indemnity Lawsuit**"). In the Indemnity Lawsuit, Travelers sought, among other things, specific performance of the Debtors and the other Indemnitors to deposit collateral security in an amount sufficient to discharge the Bond Claims.

On June 27, 2017, Travelers filed its third motion for a preliminary injunction, seeking an order requiring the Debtors and other Indemnitors to deposit collateral security.

On August 2, 2017, the District Court granted Travelers's third motion for a preliminary injunction, however, the District Court ordered additional briefing as to the amount to be deposited by the Debtors and each Indemnitor as collateral security. As of September 30, 2017, the District Court had not yet entered an order determining the amount to be deposited as collateral security.

C.    **Summary of Secured Claim**

Liquidated Sums (as of March 13, 2018)

| | |
|---|---|
| Payments on Bond Claims: | $9,848,812.58 |
| Consultant Fees, Attorneys' Fees, and Expenses: | $2,840,869.34 |
| Salvage Recovery: | ($128,380.84) |
| Approx. Subtotal: | **$12,561,301.08*** |

**\*The above amount does not include interest of which Travelers is entitled to under the terms of the Indemnity Agreement.**

**TOTAL:**    **approximately $12,561,301.08 (plus legal fees, expenses, and interest)**

**D.    Reservation of Rights, including Right of Equitable Subrogation**

Travelers reserves all rights of subrogation, including but not limited to contractual subrogation and equitable subrogation, against the Debtors or the assets of the Debtors and to the rights of others to deny the discharge of the Debtors or the dischargeability of any debts.

Travelers's calculation of its secured claim as described herein may exclude third-party collateral (if any) which may be held or recoverable by Travelers, as well as rights of recovery which Travelers may have against third parties. Travelers also reserves the right to allocate, to re-allocate, or to suspend the allocation or re-allocation of, any and all collateral security and/or payments and/or other aspects of any secured or unsecured claim to any item of its claim at any time and/or in any manner permissible by law or equity.

Further, the amount of the Loss is still accruing. As such, Travelers does not waive and expressly reserves its right to amend and/or supplement its proof of claim when the amounts become liquidated, including any payments made on the Open Bond Claims.

Nothing contained in this Proof of Claim shall constitute a waiver of (i) the right to have final orders in non-core matters entered only after *de novo* review by a United States District Court Judge; (ii) the right to trial by jury in any proceeding triable in this case or any case, controversy, or proceeding related to this case; (iii) the right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (iv) any objection to the jurisdiction or venue of this Court; (v) an election of remedy, including any election between its contribution and subrogation rights; (v) the right to amend this proof of claim upon future determination that any portion of Travelers's secured claim asserted herein is unsecured or undersecured; (vi) the right to assert claims for attorneys' fees and costs which continue to accrue and be incurred (and which are not in the amount set forth in this Proof of Claim, but to which Travelers is entitled pursuant to the Indemnity Agreement); (vii) the right to assert claims for interest which accrues and continues to accrue (and which is not set forth in this Proof of Claim, but to which Travelers is entitled pursuant to the Indemnity Agreement); and/or (viii) any other right, claim, action, defense, setoff, or recoupment, in law or in equity, under any agreement, all of which are expressly reserved.

**E.    Documents Supporting Proof of Claim**

Any documents not attached hereto are available upon request from Traveler's counsel.

.

6

# <u>EXHIBIT 1</u>

30-Sep-2008  06:02 AM  ST. PAUL TRAVELERS  2105273209  1/14

## General Agreement Of Indemnity

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
**Hartford, Connecticut 06183**

We the undersigned, individually and for and on behalf of all other Indemnitors, enter into this General Agreement of Indemnity ("Agreement") in favor of Company. Witnesseth:

WHEREAS, in the transaction of business, Bonds have heretofore been and may hereafter be executed by Company. In connection with the execution, delivery and/or assumption of obligations of such Bonds, Company requires complete indemnification.

NOW, THEREFORE, as an inducement to Company and in consideration of Company's execution and/or delivery of one or more Bonds, refraining from canceling one or more Bonds, and/or assumption of obligations by Company of one or more Bonds, and for other good and valuable consideration, the Indemnitors jointly and severally agree with Company as follows:

1. **Definitions**: For purposes of this Agreement, the following definitions apply, which definitions shall be equally applicable to both the singular and plural forms of such terms:

**Bond** - Any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, for which Company has an obligation as a result of an asset purchase, acquisition, merger or like transaction, issued for, or which Company has executed or procured for or on behalf of: (a) any one or more of the Indemnitors (without regard to whether any such Indemnitor signed this Agreement), their respective present or future direct or indirect parent companies, subsidiaries and affiliates and all of their respective successors and assigns; (b) any present or future joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of the persons or entities identified in sub-paragraph (a) above have an interest; (c) any other person or entity at the request of any of the Indemnitors; or (d) any combination of the above, whether executed or procured before, on, or after the execution of this Agreement. For the purpose of this definition, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions.

**Company** - Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns.

**Contract** - Any contract or obligation the performance of which is guaranteed or covered either in whole or in part under a Bond.

**Default** - Any of the following shall constitute a Default: (a) a declaration of Contract default by any Obligee; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract; (e) Company's good faith establishment of a reserve; (f) improper diversion of Contract funds or any Indemnitor's assets to the detriment of Contract obligations; (g) any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent; (h) any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located; (i) any representation furnished to Company by or on behalf of any Indemnitor proving to have been materially false or misleading when made; and/or (j) any change in control or existence of any Indemnitor. Change of control means the addition or departure of any person or entity having a 10% or greater ownership interest in any Indemnitor.

**Indemnitors** - Undersigned, all new indemnitors added to this Agreement by rider, their present and future direct and indirect subsidiaries, affiliates, and parent companies, and all of their successors and assigns, and any joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of them are involved, whether in existence now or formed or acquired hereafter, and any entity that obtains Bonds from Company at the request of any of the aforementioned parties, or any combination of the above.

**Loss** - All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

**Obligee** - Any person or entity in whose favor a Bond has been issued, and that person's or entity's successors and assigns.

**Property** - Indemnitors' rights, title and interest, whether now held or hereafter acquired in: (a) any Contract or contract, including but not limited to subcontracts let; (b) any and all sums due or which may hereafter become due under any Contract or contract, and all damage claims and proceeds related thereto; (c) all rights arising under any surety bonds or insurance policies; and (d) any and all accounts receivable, letters of credit, documents of title, bills of lading, warehouse receipts, machinery, plants, equipment, tools, materials, supplies, inventory, vehicles, hardware, software, machine tools, fixtures, office equipment, books, records, designs, licenses, patents, intellectual property, as-builts, construction drawings and documents, and all electronically stored information.

2. **Payment of Premium**: Indemnitors shall pay to Company all premiums for each Bond executed and all renewals and extensions thereof.

3. **Indemnification and Hold Harmless**: Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss. An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to Company shall be payable upon demand.

4. **Claim Settlement**: Company shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

S-5007 (8-2004) Mapco/Travelers GAI                                                    Page 1

30-Sep-2008 06:03 AM ST PAUL TRAVELERS 2105273209 2/14

5. **Collateral Security:** Indemnitors agree to deposit with Company, upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitor. Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond. Company shall have no duty to invest, or provide interest on, the deposit. Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.

6. **Remedies:** In the event of a Default, Indemnitors assign, convey and transfer to Company all of their rights, title and interests in Property, and Company shall have a right in its sole discretion to: (a) take possession of the work under any Contract and to complete said Contract, or cause, or consent to, the completion thereof; (b) immediately take possession of Indemnitors' Property, and utilize the Property for the completion of the work under the Contracts without payment for such use; (c) assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right or claim as Company sees fit; (d) execute in the name of any Indemnitor, any instruments deemed necessary or desirable by Company to: (i) provide Company with title to assets, (ii) take immediate possession of Contract funds whether earned or unearned, (iii) collect such sums as may be due Indemnitors and to endorse in the name of Indemnitors, and (iv) collect on any negotiable instruments; (e) require any Obligee to withhold payment of Contract funds unless and until Company consents to its release; (f) be subrogated to all the rights, remedies, properties, funds, securities and receivables relating to Indemnitors' Contracts or contracts and have the right to offset losses on any Contract or Bond against proceeds, funds, or property due from another Contract, bond or contract. Further, in the event of Default and upon demand Indemnitors shall direct that all payments, monies, and properties that are due or may become due on any Contract or contract be made payable to, and/or sent directly to, Company, and shall issue whatever writing or notices as deemed necessary by Company to effectuate the default and/or termination of any Contract.

7. **Joint and Several Liability:** The obligations of Indemnitors hereunder are joint and several. Company is authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and any such settlements shall not bar or prejudice actions by Company against or affect the liability of the other Indemnitors hereunder.

8. **Decline Execution:** Company has the right, for any reason, to decline to execute: (a) any Bond, including final Bonds where Company provided a bid Bond; (b) any Bond rider or consent authorizing any change to any Bond; and/or (c) any other consent of surety, without incurring any liability or waiving any right.

9. **Trust Fund:** All payments due or received for or on account of any Contract, whether or not in the possession of any Indemnitor, shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which Company as beneficiary may be liable under any Bond. Company may open a trust account or accounts with a bank for the deposit of the trust funds. Upon demand, Indemnitors shall deposit therein all trust funds received. Withdrawals from such trust accounts shall require the express consent of Company.

10. **Books, Records and Credit:** Indemnitors shall furnish upon demand, and Company shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested by Company, and if so, of the name and address of the consumer reporting agency furnishing the report.

11. **Attorney in Fact:** Indemnitors irrevocably constitute, appoint and designate Company as their attorney in fact with the right, but not the obligation, to exercise all rights of Indemnitors assigned or granted to Company and to execute and deliver any other assignments, documents, instruments or agreements deemed necessary by Company to exercise its rights under this Agreement in the name of any Indemnitor.

12. **Security Interest:** As security for their obligations hereunder, Indemnitors hereby grant to Company a security interest in the following properties, assets and rights of Indemnitors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property, supporting obligations, any Contract or contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (the "Collateral"). This Agreement shall for all purposes constitute a Security Agreement for the benefit of Company in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. Indemnitors hereby irrevocably authorize Company, without notice to any Indemnitor, in order to perfect the security interest granted herein, to file either: (a) this Agreement or a copy or other reproduction of this Agreement; or (b) any initial financing statements or amendments thereto that indicate the Collateral as all assets of Indemnitors or words of similar effect, as being of an equal or lesser scope or with greater detail and that contain any other information relating to any Indemnitor required by Part 5 of Article 9 of the UCC for the jurisdiction where such financing statement or amendment is filed. Company may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement.

13. **Termination:** This is a continuing Agreement, which remains in full force and effect until terminated. The sole method available to Indemnitors to terminate their participation in this Agreement is by giving written notice to Company of Indemnitors' intent to terminate. Such notice shall be sent to St. Paul Travelers Bond, Attention: Construction Services – Bond, One Tower Square, 5PB, Hartford, Connecticut 06183. The termination shall take effect thirty (30) days after Company receives such notice ("Termination Date"). The notice shall not relieve Indemnitor from its obligations for any Bond executed prior to the Termination Date or with respect to any Bond executed after the Termination Date: (a) upon the award of a Contract to any Indemnitor on a bid or proposal in respect of which Company has executed or procured a bid Bond prior to the Termination Date; or (b) which Company has become committed to execute or procure prior to the Termination Date; or (c) in connection with any maintenance, guarantee, claim, lien, litigation, or other matter involving or relating to any Bond executed prior to the Termination Date or thereafter executed or procured as provided in sub-paragraphs (a) or (b) above.

S-5007 (8-2004) Mapco/Travelers GAI                                                                      Page 2

30-Sep-2008  06:04 AM  ST PAUL TRAVELERS  9105275209  3/14

**14. Jurisdiction:** In any legal proceeding brought by or against Company that in any way relates to this Agreement, each Indemnitor, for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of Company, of the courts in any state in which any Indemnitor resides, has property, or in which any Contract is performed. Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court, that such proceeding is brought in an inconvenient forum or that the venue of such proceeding is improper.

**15. Other Sureties:** If Company procures the execution of Bonds by other sureties, executes Bonds with co-sureties or obtains reinsurance, the provisions of this Agreement inure to the benefit of such other surety, co-surety or reinsurer, but only as to such Bonds.

**16. Nature of Rights:** If any provision or portion of this Agreement is or becomes unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted. This Agreement is in addition to and not in lieu of any other agreement of Indemnity, whether now existing or entered into hereafter. Company shall be entitled to specific performance of the terms of this Agreement in addition to any other remedy at law or equity. Time is of the essence in this Agreement. Whenever the context may require, any pronoun used in this Agreement shall include the corresponding masculine, feminine and neuter forms. The rights and remedies afforded to Company by the terms of this Agreement can only be modified by a written rider to this Agreement signed by an authorized representative of Company. If any Indemnitor fails to execute or improperly executes this Agreement or is otherwise found not to be bound under this Agreement, such failure or finding shall not affect the obligations of the other Indemnitors. The failure to sign or the improper execution of a Bond shall not affect Company's rights under this Agreement, and Indemnitors waive any claim they may have, now or at any time in the future, arising out of the failure to sign or properly execute a Bond. Termination and/or limitation of any Indemnitors' obligations under this Agreement shall in no way affect the obligations of any of the other Indemnitors whose obligations have not been terminated and/or limited. Indemnitors acknowledge this Agreement can be amended via rider to add another person, entity or entities as Indemnitor(s) to this Agreement and Indemnitors waive any and all notice in connection with the addition of additional Indemnitors and further acknowledge the rights and obligations provided herein shall apply to all Indemnitors whenever made a party to this Agreement.

**17. Jury Waiver:** Indemnitors hereby waive and covenant that they will not assert any right to trial by jury in respect to any legal proceeding arising out of this Agreement.

**18. Resolution:** Indemnitors have a substantial, material and beneficial interest: (a) in the obtaining of Bonds by any of the Indemnitors and (b) in the transaction(s) for which any Indemnitor has applied or will apply to Company for Bonds pursuant to this Agreement. Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further acknowledge and agree that: (x) the execution, delivery and performance of this Agreement by such Indemnitors; (y) the compliance with the terms and provisions hereof and (z) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a Default hereunder.

**19. Date of Agreement:** The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.

**20. Individual Indemnity:** The individual indemnity of Joe Alex Muniz shall apply to Jamco Ventures, L.L.C. only. The individual indemnity of Michael Wibracht or Laura Wibracht shall apply to Blackhawk Ventures, L.L.C. and MBH Ventures, L.L.C. only. The individual indemnity of Reuben Macias Villarreal or Manuela Villarreal shall apply to Blackhawk Ventures, L.L.C. and MBH Ventures, L.L.C. only. The individual indemnity of Manuel G. Villanueva shall apply to Homeland Construction, Inc. only. The individual indemnity of Robert A. Livar or Rosemary Y. Livar shall apply to CDI Ventures, Inc. only. The individual indemnity of Robert Padron or Josephine H. Padron shall apply to CDI Ventures, Inc. only. The individual indemnity of Albert Macias shall apply to Amco Steel Fabrication, L.L.C. only. The individual indemnity of Michael Martinez or Sandra Martinez shall apply to Promasters Construction, Inc. only. The individual indemnity of Armando A. Aranda, Jr. or Sara Y. Aranda shall apply to MILCON Construction, L.L.C. only.

**WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH. IN TESTIMONY HEREOF, THE INDEMNITORS HAVE SET THEIR HANDS AND FIXED THEIR SEALS AS SET FORTH BELOW.**

IMPORTANT:
1. PRINT OR TYPE NAMES UNDER EACH SIGNATURE.
2. ALL PERSONAL INDEMNITORS MUST PROVIDE A RESIDENTIAL ADDRESS AND SOCIAL SECURITY NUMBER AND EACH SIGNATURE MUST BE NOTARIZED.
3. ALL ENTITY INDEMNITORS MUST PROVIDE AN ADDRESS AND FEDERAL TAX IDENTIFICATION NUMBER, IF APPLICABLE. TWO SIGNATURES ARE REQUIRED OF ALL ENTITIES AND EACH SIGNATURE MUST BE NOTARIZED.

30-Sep-2008  06:04 AM  ST PAUL TRAVELERS  2105273209  4/14

If Indemnitor an Individual, sign below:

_____     9/16/08
Indemnitor – Individual  (signature)     Month/Day/Year     Address

Michael A. Padron
Indemnitor – Individual     (print or type)     SS#

ACKNOWLEDGEMENT
STATE OF ~~XXXXXXXXXX~~     County of ~~XXXXXXXXXX~~
On this 11th day of SEPT , 2008 , before me personally appeared Michael A. Padron of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                   Butter R. Butler
                                   Notary Public     (signature)

                                   BETTY R. BUTLER
                                   Notary Public     (print or type)

[SEAL: BETTY R. BUTLER NOTARY PUBLIC STATE OF TEXAS COMMISSION EXPIRES: OCTOBER 17, 2010]

Notary Public residing at 7503 KAREN SKYE SAN ANTONIO, TX 78257

Commission expires: 10/17/10

_____     9/16/08
Indemnitor – Individual  (signature)     Month/Day/Year     Address

Maria D. Padron
Indemnitor – Individual     (print or type)     SS#

ACKNOWLEDGEMENT
STATE OF ~~XXXXXXXXXX~~     County of ~~XXXXXXXXXX~~
On this 16th day of SEPT , 2008 , before me personally appeared Maria D. Padron of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                   Butter R. Butler
                                   Notary Public     (signature)

                                   BETTY R. BUTLER
                                   Notary Public     (print or type)

[SEAL: BETTY R. BUTLER NOTARY PUBLIC STATE OF TEXAS COMMISSION EXPIRES: OCTOBER 17, 2010]

Notary Public residing at 7503 KAREN SKYE SAN ANTONIO, TX 78257

Commission expires: 10/17/10

_____     9/16/08
Indemnitor – Individual  (signature)     Month/Day/Year     Address

Joe Alex Muniz
Indemnitor – Individual     (print or type)     SS#

ACKNOWLEDGEMENT
STATE OF ~~XXXXXXXXXX~~     County of ~~XXXXXXXXXX~~
On this 11th day of SEPT , 2008 , before me personally appeared Joe Alex Muniz of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                   Butter R. Butler
                                   Notary Public     (signature)

                                   BETTY R. BUTLER
                                   Notary Public     (print or type)

[SEAL: BETTY R. BUTLER NOTARY PUBLIC STATE OF TEXAS COMMISSION EXPIRES: OCTOBER 17, 2010]

Notary Public residing at 7503 KAREN SKYE SAN ANTONIO, TX 78257

Commission expires: 10/17/10

S-5007 (8-2004)  Mapco/Travelers GAI                    Page 4

**Travelers Casualty and Surety Company of America**
**General Agreement of Indemnity**
**Additional Indemnitor Rider**

This Rider is hereby incorporated into, and forms a part of, the General Agreement of Indemnity executed by Michael A. Padron, Maria D. Padron, Joe Alex Muniz, Albert Macias, Michael Wibracht, Laura Wibracht, Manuel G. Villanueva, Ruben M. Villareal, Manuela Villareal, Robert Padron, Josephine H. Padron, Michael Martinez, Sandra Martinez, Robert Livar, Rosemary Y. Livar, Aemando A. Aranda Jr., Sara Y. Aranda, MAPCO, Inc., CDI Ventures, Inc., Armco Steel Fabrication, Inc., Blackhawk Ventures, LLC., Promasters Construction, Inc., Jamco Ventures, LLC., Homeland Construction, Inc., MBH Ventures, LLC, and Milcon Construction, LLC ("Indemnitors") in favor of Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns ("Company"), and dated September 16, 2008 ("Agreement").

James Brian Taylor, Fameeda Taylor, Steven B. Wibracht, Erin Michelle Wibracht, Raymond Jenkins, Wendy Lee Jenkins ("Undersigned") shall become an additional Indemnitor to the Agreement bound by all of the terms and conditions of the Agreement. The Undersigned agrees that all capitalized terms used in this Rider but not defined herein are used with the meanings given them in the Agreement.

The Undersigned acknowledges he/she has read the Agreement carefully. There are no separate agreements or understandings which in any way lessen the obligations as set forth in the Agreement. The Undersigned has a substantial, material and beneficial interest: (a) in the obtaining of Bonds by any of the Indemnitors; and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bonds pursuant to the Agreement. The Undersigned has the full power and authority to execute, deliver and perform the Agreement and to carry out the obligations stated therein. The Undersigned further acknowledges and agrees that: (x) the execution, delivery and performance of the Agreement; (y) the compliance with the terms and provisions thereof; and (z) the carrying out of the obligations contemplated therein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of Undersigned, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Undersigned, or any other agreement binding upon Undersigned, or constitute a default thereunder.

This Rider shall: (1) not relieve, reduce, diminish or lessen the obligations of any other Indemnitor from any obligations set forth in the Agreement; and (2) not limit Company's rights and/or remedies under the Agreement.

| If Indemnitor an Individual, sign below: |
|---|

Indemnitor – Individual (signature)

*April 10, 2013*
Month/Day/Year

422 Blue Springs
San Antonio, TX 78260
Address

James Brian Taylor
Indemnitor – Individual (print or type)

SS#

ACKNOWLEDGEMENT
STATE OF *TEXAS* County of *BEXAR*

On this 10 day of *April*, 2013, before me personally appeared *James Brian Taylor* of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Notary Public (signature)

*Roxanne Hensley*
Notary Public (print or type)

ROXANNE HENSLEY
Notary Public State of Texas
My Comm. Exp. June 16, 2014

Notary Public residing at: 316 Quail Run
La Vernia, TX 78121

Commission expires:
*June 16, 2014*

| If Indemnitor an Individual, sign below: |
|---|

_____      April 10, 2013      422 Blue Springs
Indemnitor – Individual  (signature)   Month/Day/Year   San Antonio, TX 78260
                                                         Address

Fameeda Taylor
Indemnitor – Individual    (print or type)      SS#

ACKNOWLEDGEMENT
STATE OF TEXAS        County of BEXAR
On this 10 day of April 2013, before me personally appeared Fameeda Taylor of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                                Roxanne Hensley
                                                Notary Public      (signature)

ROXANNE HENSLEY              Roxanne Hensley
Notary Public State of Texas  Notary Public    (print or type)
My Comm. Exp. June 16, 2014

Notary Public residing at: 316 Quail Run
La Vernia, TX 78121

Commission expires: June 16, 2014

| If Indemnitor an Individual, sign below: |
|---|

_____      April 10, 2013      536 E. Borgfield Rd
Indemnitor – Individual  (signature)   Month/Day/Year   San Antonio, TX 78260
                                                         Address

Steven B. Wibracht
Indemnitor – Individual    (print or type)      SS#

ACKNOWLEDGEMENT
STATE OF TEXAS        County of Bexar
On this 10 day of April 2013 before me personally appeared Steven Wibracht of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                                Roxanne Hensley
                                                Notary Public      (signature)

ROXANNE HENSLEY              Roxanne Hensley
Notary Public State of Texas  Notary Public    (print or type)
My Comm. Exp. June 15, 2014

Notary Public residing at: 316 Quail Run
La Vernia, TX 78121

Commission expires: June 16, 2014

Additional Indemnitor Rider 8-2004                    Page 2 of 4

| If Indemnitor an Individual, sign below: |

_G. Michelle Wibus_
Indemnitor – Individual      (signature)

_April 10, 2013_
Month/Day/Year

536 E. Borgfield Rd.
San Antonio, TX 78260
Address

Erin Michelle Wibracht
Indemnitor – Individual      (print or type)

SS#

ACKNOWLEDGEMENT
STATE OF TEXAS        County of BEXAR
On this _10_ day of _April_, _2013_, before me personally appeared _Erin Michelle Wibracht_ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Roxanne Hensley_
Notary Public      (signature)

_Roxanne Hensley_
Notary Public      (print or type)

ROXANNE HENSLEY
Notary Public  State of Texas
My Comm. Exp. June 16, 2014

Notary Public residing at: 316 Quail Run
La Vernia, TX 78121

Commission expires: June 16, 2014

---

| If Indemnitor an Individual, sign below: |

Indemnitor – Individual      (signature)

_April 10, 2013_
Month/Day/Year

260 Rainbow Dr.
Lakehills, TX 78063
Address

Raymond Jenkins
Indemnitor – Individual      (print or type)

SS#

ACKNOWLEDGEMENT
STATE OF TEXAS        County of BEXAR
On this _10_ day of _April_, _2013_, before me personally appeared _Raymond Jenkins_ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Roxanne Hensley_
Notary Public      (signature)

_Roxanne Hensley_
Notary Public      (print or type)

ROXANNE HENSLEY
Notary Public  State of Texas
My Comm. Exp. June 16, 2014

Notary Public residing at: 316 Quail Run
La Vernia, TX 78121

Commission expires: June 16, 2014

Additional Indemnitor Rider 8-2004

Page 3 of 4

If Indemnitor an Individual, sign below:

_____
Indemnitor – Individual          (signature)

April 10, 2013              260 Rainbow Dr.
Month/Day/Year              Lakehills, TX 78063
                            Address

Wendy Lee Jenkins
Indemnitor – Individual          (print or type)

SS# ▮▮▮▮▮▮

ACKNOWLEDGEMENT
STATE OF ▮▮TEXAS▮▮          County of ▮▮BEXAR▮▮

On this 10 day of April , 2013 before me personally appeared Wendy Lee Jenkins of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public                    (signature)

Roxanne Hensley
Notary Public                    (print or type)

Notary Public residing at: 316 Quail Run
La Vernia, TX 78121

Commission expires: June 16, 2014

Additional Indemnitor Rider 8-2004                              Page 4 of 4

## DECLARATION OF ROXANNE HENSLEY

STATE OF TEXAS          §

COUNTY OF BEXAR        §

My name is Roxanne Hensley. I am over 21 years of age. My address is 316 Quail Run, Lavernia, Texas 78121. I have personal knowledge of the facts and matters set forth herein based upon my involvement and participation in the same and they are true and correct.

I am a Texas Notary Public and was so on April 10, 2013.

On April 10, 2013, I notarized the signatures of Fameeda Taylor, Steven Wibracht, Erin Michelle Wibracht and Raymond Jenkins, on the attached two pages, and affixed my notary seal to and signed each acknowledgment as a Texas Notary Public. I knew each of the signers and was familiar with their signatures. I had no reason to doubt the authenticity of their signatures even though they were not present when I signed each acknowledgement. I did not see any of them sign in my presence. When I signed the the acknowldgement for each of the four signers, their signatures appeared on one page of the two pages only. There were no other documents or pages attached to the two signature pages that I signed. True copies of such two pages are attached hereto.

This concludes my statement.

I declare under penalty of perjury pursuant to Sec. 132.001. UNSWORN DECLARATION of the Texas Civil Practice and Remedies Code that the foregoing is true and correct.

Executed in San Antonio, Bexar County, Texas on this 10th day of September, 2018.

_____
Roxanne Hensley

**EXHIBIT**

"C"

If Indemnitor an Individual, sign below:

_April 10,2013_    422 Blue Springs
_____  _____    San Antonio, TX 78260
Indemnitor – Individual    (signature)     Month/Day/Year    Address

Fameeda Taylor
_____  _____        ▓▓▓▓▓▓▓▓
Indemnitor – Individual    (print or type)        SS#

ACKNOWLEDGEMENT
STATE OF _TEXAS_      County of _BEXAR_
On this _10_ day of _April_, _2013_, before me personally appeared _Fameeda Taylor_ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                             _Roxanne Hensley_
                             Notary Public      (signature)

ROXANNE HENSLEY
Notary Public State of Texas     _Roxanne Hensley_
My Comm. Exp. June 16, 2014     Notary Public      (print or type)

                             Notary Public residing at: _316 Quail Run_
                                       _La Vernia, TX 78121_

                             Commission expires:
                                 _June 16, 2014_

---

If Indemnitor an Individual, sign below:

_April 10,2013_    638 E. Borgfield Rd
_____  _____    San Antonio, TX 78260
Indemnitor – Individual    (signature)     Month/Day/Year    Address

Steven B. Wibracht
_____  _____        ▓▓▓▓▓▓▓▓
Indemnitor – Individual    (print or type)        SS#

ACKNOWLEDGEMENT
STATE OF _TEXAS_      County of _Bexar_
On this _10_ day of _April_, _2013_ before me personally appeared _Steven Wibracht_ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                             _Roxanne Hensley_
                             Notary Public      (signature)

ROXANNE HENSLEY
Notary Public State of Texas     _Roxanne Hensley_
My Comm. Exp. June 16, 2014     Notary Public      (print or type)

                             Notary Public residing at: _316 Quail Run_
                                       _La Vernia, TX 78121_

                             Commission expires:
                                 _June 16, 2014_

Additional Indemnitor Rider 8-2004                              Page 2 of 4

| If Indemnitor an Individual, sign below: |

_G. Michelle Witts_ (signature)
Indemnitor – Individual          (signature)

April 10, 2013          536 E. Borgfield Rd.
Month/Day/Year     San Antonio, TX 78260
                          Address

Erin Michelle Wibracht
Indemnitor – Individual          (print or type)

SS# ▓▓▓▓▓▓▓

ACKNOWLEDGEMENT
STATE OF ~~TEXAS~~          County of ~~BEXAR~~
On this _10_ day of _April_, _2013_, before me personally appeared _Erin Michelle Wibracht_ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Roxanne Hensley_
Notary Public          (signature)

_ROXANNE HENSLEY_
Notary Public          (print or type)

ROXANNE HENSLEY
Notary Public · State of Texas
My Comm. Exp. June 16, 2014

Notary Public residing at: _316 Quail Run_
_La Vernia, TX 78121_

Commission expires:
_June 16, 2014_

| If Indemnitor an Individual, sign below: |

_Raymond Jenkins_ (signature)
Indemnitor – Individual          (signature)

April 10, 2013          260 Rainbow Dr.
Month/Day/Year     Lakehills, TX 78063
                          Address

Raymond Jenkins
Indemnitor – Individual          (print or type)

SS# ▓▓▓▓▓▓▓

ACKNOWLEDGEMENT
STATE OF ~~TEXAS~~          County of ~~BEXAR~~
On this _10_ day of _April_, _2013_, before me personally appeared _Raymond Jenkins_ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Roxanne Hensley_
Notary Public          (signature)

_ROXANNE HENSLEY_
Notary Public          (print or type)

ROXANNE HENSLEY
Notary Public · State of Texas
My Comm. Exp. June 16, 2014

Notary Public residing at: _316 Quail Run_
_La Vernia, TX 78121_

Commission expires:
_June 16, 2014_

Additional Indemnitor Rider 8-2004                                                    Page 3 of 4