## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | NO. 17-52300-rbk |
| | § | |
| **STEVEN BRICE WIBRACHT AND** | § | |
| **ERIN MICHELLE WIBRACHT** | § | |
| | § | |
| **DEBTORS** | § | **CHAPTER 7** |
| | § | |
| | § | |
| **TRAVELERS CASUALTY AND** | § | |
| **SURETY COMPANY OF AMERICA** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **V.** | § | **ADV. NO. 18-05203-rbk** |
| | § | |
| **STEVEN BRICE WIBRACHT AND** | § | |
| **ERIN MICHELLE WIBRACHT** | § | |
| | § | |
| **DEFENDANTS** | § | |

### DEFENDANTS STEVEN BRICE WIBRACHT AND ERIN MICHELLE WIBRACHT'S FIRST AMENDED ORIGINAL ANSWER

## TO THE HONORABLE RONALD B. KING, CHIEF US BANKRUPTCY JUDGE:

Steven Brice Wibracht and Erin Michelle Wibracht, Defendants, respectfully represent:

1.    Defendants admit the allegations contained in paragraph 1 of Plaintiff's Amended Complaint.

2.    Defendants admit the allegations contained in paragraph 2 of Plaintiff's Amended Complaint.

3.    Defendants admit the allegations contained in paragraph 3 of Plaintiff's Amended Complaint.

4.    Defendants admit the allegations contained in paragraph 4 of Plaintiff's Amended Complaint.

5. Defendants deny the allegations contained in paragraph 5 of Plaintiff's Amended Complaint.

6. Defendants admit the allegations contained in paragraph 6 of Plaintiff's Amended Complaint.

7. Defendants admit the allegations contained in paragraph 7 of Plaintiff's Amended Complaint.

8. Defendants admit the allegations contained in paragraph 8 of Plaintiff's Amended Complaint.

9. Defendants admit the allegations contained in paragraph 9 of Plaintiff's Amended Complaint.

10. Defendants admit the allegations contained in paragraph 10 of Plaintiff's Amended Complaint.

11. Defendants admit the allegations contained in paragraph 11 of Plaintiff's Amended Complaint.

12. Defendants admit the allegations contained in paragraph 12 of Plaintiff's Amended Complaint.

13. Defendants admit the allegations contained in paragraph 13 of Plaintiff's Amended Complaint.

14. Defendants admit the allegations contained in paragraph 14 of Plaintiff's Amended Complaint.

15. Defendants admit the allegations contained in paragraph 15 of Plaintiff's Amended Complaint.

16. Defendants admit the allegations contained in paragraph 16 of Plaintiff's Amended Complaint.

17. Defendants admit the allegations contained in paragraph 17 of Plaintiff's Amended Complaint.

18. Defendants admit the allegations contained in paragraph 18 of Plaintiff's Amended Complaint.

19. Defendants admit the allegations contained in paragraph 19 of Plaintiff's Amended Complaint.

20. Defendants admit the allegations contained sentences 1, 2 and 4, but deny the allegations in sentences 3 and 5 of paragraph 20 of Plaintiff's Amended Complaint.

21. Defendants deny the allegations contained in the first sentence but admit the allegations contained in the second sentence of paragraph 21 of Plaintiff's Amended Complaint.

22. Defendants admit the allegations contained in paragraph 22 of Plaintiff's Amended Complaint. These statements must be viewed in light of consistent additional testimony and the sale agreement provided.

23. Defendants deny the allegations contained in paragraph 23 of Plaintiff's Amended Complaint.

24. Defendants admit the allegations contained in paragraph 24 of Plaintiff's Amended Complaint.

25. Defendants admit the allegations contained in paragraph 25 of Plaintiff's Amended Complaint.

26. Defendants admit the allegations contained in paragraph 26 of Plaintiff's Amended Complaint.

27.     Defendants admit the allegations contained in paragraph 27 of Plaintiff's Amended Complaint.

28.     Defendants admit the allegations contained in paragraph 28 of Plaintiff's Amended Complaint.

29.     Defendants admit the allegations contained in paragraph 29 of Plaintiff's Amended Complaint.

30.     Defendants deny the allegations contained in paragraph 30 of Plaintiff's Amended Complaint.  Some Core assets may have been held in his name.

31.     Defendants admit the allegations contained in paragraph 31 of Plaintiff's Amended Complaint.

32.     Defendants admit the allegations contained in paragraph 32 of Plaintiff's Amended Complaint.

33.     Defendants admit the allegations contained in paragraph 33 of Plaintiff's Amended Complaint.

34.     Defendants deny the allegations contained in paragraph 34 of Plaintiff's Amended Complaint.  The sale of his interest in Core contained other consideration as set forth in the sale agreement produced.

35.     Defendants deny the allegations contained in paragraph 35 of Plaintiff's Amended Complaint.

36.     Defendants admit the allegations contained in paragraph 36 of Plaintiff's Amended Complaint.

37.     Defendants admit the allegations contained in paragraph 37 of Plaintiff's Amended Complaint.

4

38.    Defendants admit the allegations contained in paragraph 38 of Plaintiff's Amended Complaint.

39.    Defendants deny the allegations contained in paragraph 39 of Plaintiff's Amended Complaint.

40.    Defendants deny the allegations contained in paragraph 40 of Plaintiff's Amended Complaint.  There was other consideration paid as per the parties sale agreement.

41.    Defendants deny the allegations contained in paragraph 41 of Plaintiff's Amended Complaint.

42.    Defendants admit the allegations contained in paragraph 42 of Plaintiff's Amended Complaint.

43.    Defendants deny the allegations contained in paragraph 43 of Plaintiff's Amended Complaint.

44.    Defendants deny the allegations contained in paragraph 44 of Plaintiff's Amended Complaint.

45.    Defendants admit the allegations contained in paragraph 45 of Plaintiff's Amended Complaint.

46.    Defendants deny the allegations contained in paragraph 46 of Plaintiff's Amended Complaint.

47.    Defendants deny the allegations contained in paragraph 47 of Plaintiff's Amended Complaint.

48.    Defendants deny the allegations contained in paragraph 48 of Plaintiff's Amended Complaint.

49.     Defendants admit the allegations contained in paragraph 49 of Plaintiff's Amended Complaint.

50.     Defendants deny the allegations contained in paragraph 50 of Plaintiff's Amended Complaint.

51.     Defendants deny the allegations contained in paragraph 51 of Plaintiff's Amended Complaint.

52.     Defendants deny the allegations contained in paragraph 52 of Plaintiff's Amended Complaint.

53.     Defendants admit the allegations contained in paragraph 53 of Plaintiff's Amended Complaint.

54.     Defendants admit the allegations contained in paragraph 54 of Plaintiff's Amended Complaint.

55.     Defendants admit the allegations contained in paragraph 55 of Plaintiff's Amended Complaint.

56.     Defendants admit the allegations contained in paragraph 56 of Plaintiff's Amended Complaint.

57.     Defendants admit the allegations contained in paragraph 57 of Plaintiff's Amended Complaint.

58.     Defendants deny the allegations contained in paragraph 58 of Plaintiff's Amended Complaint.

59.     Defendants deny the allegations contained in paragraph 59 of Plaintiff's Amended Complaint.  Plaintiff did not attach page 24 so Defendants cannot verify the truth or falsity of the allegation as to a document not produced.

60.     Defendants admit the allegations contained in paragraph 60 of Plaintiff's Amended Complaint.

61.     Defendants admit the allegations contained in paragraph 61 of Plaintiff's Amended Complaint.

62.     Defendants deny the allegations contained in paragraph 62 of Plaintiff's Amended Complaint.

63.     Defendants deny the allegations contained in paragraph 63 of Plaintiff's Amended Complaint.

64.     Defendants admit the allegations contained in paragraph 64 of Plaintiff's Amended Complaint.

65.     Defendants admit the allegations contained in paragraph 65 of Plaintiff's Amended Complaint.

66.     Defendants admit the allegations contained in paragraph 66 of Plaintiff's Amended Complaint.

67.     Defendants admit the allegations contained in paragraph 67 of Plaintiff's Amended Complaint.

68.     Defendants deny the allegations contained in paragraph 68 of Plaintiff's Amended Complaint.

69.     Defendants deny the allegations contained in paragraph 69 of Plaintiff's Amended Complaint.

70.     Defendants deny the allegations contained in paragraph 70 of Plaintiff's Amended Complaint.

71.     Defendants deny the allegations contained in paragraph 71 of Plaintiff's Amended Complaint.

7

72.     Defendants deny the allegations contained in paragraph 72 of Plaintiff's Amended Complaint. Loans from Brown are not income. Loans are not required to be disclosed as income.

73.     Defendants deny the allegations contained in paragraph 73 of Plaintiff's Amended Complaint. The pages referred to are not attached or properly identified.

74.     Defendants deny the allegations contained in paragraph 74 of Plaintiff's Amended Complaint.

75.     Defendants deny the allegations contained in paragraph 75 of Plaintiff's Amended Complaint.

76.     Defendants admit the allegations contained in paragraph 76 of Plaintiff's Amended Complaint.

77.     Defendants deny the allegations contained in paragraph 77 of Plaintiff's Amended Complaint.

78.     Defendants deny the allegations contained in paragraph 78 of Plaintiff's Amended Complaint.

79.     Defendants deny the allegations contained in paragraph 79 of Plaintiff's Amended Complaint.

80.     Defendants deny the allegations contained in paragraph 80 of Plaintiff's Amended Complaint.

81.     Defendants deny the allegations contained in paragraph 81 of Plaintiff's Amended Complaint.

82.     Defendants deny the allegations contained in paragraph 82 of Plaintiff's Amended Complaint. Some of the pages to which reference is made are not attached or refer to other matters.

83. Defendants admit the allegations contained in paragraph 83 of Plaintiff's Amended Complaint.

84. Defendants deny the allegations contained in paragraph 84 of Plaintiff's Amended Complaint.

85. Defendants deny the allegations contained in paragraph 85 of Plaintiff's Amended Complaint.

86. Defendants admit the allegations contained in paragraph 86 of Plaintiff's Amended Complaint.

87. Defendants deny the allegations contained in paragraph 87 of Plaintiff's Amended Complaint.

88. Defendants deny the allegations contained in paragraph 88 of Plaintiff's Amended Complaint.

89. Defendants deny the allegations contained in paragraph 89 of Plaintiff's Amended Complaint.

90. Defendants deny the allegations contained in paragraph 90 of Plaintiff's Amended Complaint.

91. Defendants deny the allegations contained in paragraph 91 of Plaintiff's Amended Complaint.

92. Defendants deny the allegations contained in paragraph 92 of Plaintiff's Amended Complaint. Tax refunds are not income and need not be disclosed on the statement of financial affairs. There is no question to be answered as to tax refunds.

93. Defendants deny the allegations contained in paragraph 93 of Plaintiff's Amended Complaint.

94.     Defendants deny the allegations contained in paragraph 94 of Plaintiff's Amended Complaint.

95.     Defendants deny the allegations contained in paragraph 95 of Plaintiff's Amended Complaint.

96.     Defendants deny the allegations contained in paragraph 96 of Plaintiff's Amended Complaint.

97.     Defendants deny the allegations contained in paragraph 97 of Plaintiff's Amended Complaint.

98.     Defendants admit the allegations contained in paragraph 98 of Plaintiff's Amended Complaint.

99.     Defendants admit the allegations contained in paragraph 99 of Plaintiff's Amended Complaint.

100.    Defendants deny the allegations contained in paragraph 100 of Plaintiff's Amended Complaint.  Erin Wibracht redeemed some treasury bonds post petition but the exact date is unknown.

101.    Defendants admit the allegations contained in paragraph 101 of Plaintiff's Amended Complaint.

102.    Defendants deny the allegations contained in paragraph 102 of Plaintiff's Amended Complaint.

103.    Defendants deny the allegations contained in paragraph 103 of Plaintiff's Amended Complaint.

104.    Defendants admit the allegations contained in paragraph 104 of Plaintiff's Amended Complaint.

105. Defendants admit the allegations contained in paragraph 105 of Plaintiff's Amended Complaint.

106. Defendants deny the allegations contained in paragraph 106 of Plaintiff's Amended Complaint. That cited testimony concerns a vehicle which the Debtor purchased for his brother.

107. Defendants deny the allegations contained in paragraph 107 of Plaintiff's Amended Complaint.

108. Defendants admit the allegations contained in paragraph 108 of Plaintiff's Amended Complaint.

109. Defendants admit the allegations contained in paragraph 109 of Plaintiff's Amended Complaint.

110. Defendants admit the allegations contained in paragraph 110 of Plaintiff's Amended Complaint.

111. Defendants deny the allegations contained in paragraph 111 of Plaintiff's Amended Complaint. Schedule A was not involved.

112. Defendants admit the allegations contained in paragraph 112 of Plaintiff's Amended Complaint.

113. Defendants admit the allegations contained in paragraph 113 of Plaintiff's Amended Complaint.

114. Defendants deny the allegations contained in paragraph 114 of Plaintiff's Amended Complaint.

115. Defendants deny the allegations contained in paragraph 115 of Plaintiff's Amended Complaint.

116. Defendants deny the allegations contained in paragraph 116 of Plaintiff's Amended Complaint.

117. Defendants deny the allegations contained in paragraph 117 of Plaintiff's Amended Complaint.

118. Defendants deny the allegations contained in paragraph 118 of Plaintiff's Amended Complaint.

119. Defendants admit the allegations contained in paragraph 119 of Plaintiff's Amended Complaint.

120. Defendants deny the allegations contained in paragraph 120 of Plaintiff's Amended Complaint.

121. Defendants deny the allegations contained in paragraph 121 of Plaintiff's Amended Complaint.

122. Defendants admit the allegations contained in paragraph 122 of Plaintiff's Amended Complaint.

123. Defendants deny the allegations contained in paragraph 123 of Plaintiff's Amended Complaint.

124. Defendants deny the allegations contained in paragraph 124 of Plaintiff's Amended Complaint.

125. Defendants deny the allegations contained in paragraph 125 of Plaintiff's Amended Complaint.

126. Defendants deny the allegations contained in paragraph 126 of Plaintiff's Amended Complaint. This matter was tried and decided in a manner adverse to Plaintiff. It is collaterally estopped and precluded from again raising this issue which has now become the law of the case.

127.  Defendants admit the allegations contained in paragraph 127 of Plaintiff's Amended Complaint.

128.  Defendants deny the allegations contained in paragraph 128 of Plaintiff's Amended Complaint.

129.  Defendants deny the allegations contained in paragraph 129 of Plaintiff's Amended Complaint.

130.  Defendants admit the allegations contained in paragraph 130 of Plaintiff's Amended Complaint.

131.  Defendants deny the allegations contained in paragraph 131 of Plaintiff's Amended Complaint.

132.  Defendants deny the allegations contained in paragraph 132 of Plaintiff's Amended Complaint.  This matter was tried and decided in a manner adverse to Plaintiff.  It is collaterally estopped and precluded from again raising this issue which has now become the law of the case.

133.  Defendants admit the allegations contained in paragraph 133 of Plaintiff's Amended Complaint.

134.  Defendants deny the allegations contained in paragraph 134 of Plaintiff's Amended Complaint.

135.  Defendants admit the allegations contained in paragraph 135 of Plaintiff's Amended Complaint.  This was a term life policy with no cash value valued at $1.00.

136.  Defendants deny the allegations contained in paragraph 136 of Plaintiff's Amended Complaint.  She had no such policy on the date of filing.

137. Defendants deny the allegations contained in paragraph 137 of Plaintiff's Amended Complaint.

138. Defendants admit the allegations contained in paragraph 138 of Plaintiff's Amended Complaint.

139. Defendants admit the allegations contained in paragraph 139 of Plaintiff's Amended Complaint.

140. Defendants deny the allegations contained in paragraph 140 of Plaintiff's Amended Complaint.

141. Defendants admit the allegations contained in paragraph 141 of Plaintiff's Amended Complaint.

142. Defendants admit the allegations contained in paragraph 142 of Plaintiff's Amended Complaint.

143. Defendants admit the allegations contained in paragraph 143 of Plaintiff's Amended Complaint.

144. Defendants admit the allegations contained in paragraph 144 of Plaintiff's Amended Complaint.

145. Defendants deny the allegations contained in paragraph 145 of Plaintiff's Amended Complaint.

146. Defendants admit the allegations contained in paragraph 146 of Plaintiff's Amended Complaint.

147. Defendants admit the allegations contained in paragraph 147 of Plaintiff's Amended Complaint.

148. Defendants admit the allegations contained in paragraph 148 of Plaintiff's Amended Complaint.

149.   Defendants admit the allegations contained in paragraph 149 of Plaintiff's Amended Complaint.

150.   Defendants admit the allegations contained in paragraph 150 of Plaintiff's Amended Complaint.

151.   Defendants deny the allegations contained in paragraph 151 of Plaintiff's Amended Complaint.

152.   Defendants deny the allegations contained in paragraph 152 of Plaintiff's Amended Complaint.

153.   Defendants deny the allegations contained in paragraph 153 of Plaintiff's Amended Complaint.

154.   Defendants deny the allegations contained in paragraph 154 of Plaintiff's Amended Complaint.

155.   Defendants deny the allegations contained in paragraph 155 of Plaintiff's Amended Complaint.

156.   Defendants deny the allegations contained in paragraph 156 of Plaintiff's Amended Complaint.

157.   Defendants deny the allegations contained in paragraph 157 of Plaintiff's Amended Complaint.

158.   Defendants deny the allegations contained in paragraph 158 of Plaintiff's Amended Complaint.

159.   Defendants deny the allegations contained in paragraph 159 of Plaintiff's Amended Complaint.

160.   Defendants deny the allegations contained in paragraph 160 of Plaintiff's Amended Complaint.

161.  Defendants deny the allegations contained in paragraph 161 of Plaintiff's Amended Complaint.

162.  Defendants deny the allegations contained in paragraph 162 of Plaintiff's Amended Complaint.

163.  Defendants deny the allegations contained in paragraph 163 of Plaintiff's Amended Complaint.

164.  Defendants admit the allegations contained in paragraph 164 of Plaintiff's Amended Complaint.

165.  Defendants deny the allegations contained in paragraph 165 of Plaintiff's Amended Complaint.  The transcript does not say that.

166.  Defendants deny the allegations contained in paragraph 166 of Plaintiff's Amended Complaint.

167.  Defendants admit the allegations contained in paragraph 167 of Plaintiff's Amended Complaint.

168.  Defendants admit the allegations contained in paragraph 168 of Plaintiff's Amended Complaint.

169.  Defendants admit the allegations contained in paragraph 169 of Plaintiff's Amended Complaint.

170.  Defendants are unable to admit or deny due to insufficient information the allegations contained in paragraph 170 of Plaintiff's Amended Complaint.

171.  Defendants deny the allegations contained in paragraph 171 of Plaintiff's Amended Complaint.

172.  Defendants deny the allegations contained in paragraph 172 of Plaintiff's Amended Complaint.

173. Defendants admit the allegations contained in paragraph 173 of Plaintiff's Amended Complaint.

174. Defendants admit the allegations contained in paragraph 174 of Plaintiff's Amended Complaint.

175. Defendants admit the allegations contained in paragraph 175 of Plaintiff's Amended Complaint.

176. Defendants admit the allegations contained in paragraph 176 of Plaintiff's Amended Complaint.

177. Defendants admit the allegations contained in paragraph 177 of Plaintiff's Amended Complaint.

178. Defendants deny the allegations contained in paragraph 178 of Plaintiff's Amended Complaint.

179. Defendants admit the allegations contained in paragraph 179 of Plaintiff's Amended Complaint.

180. Defendants admit the allegations contained in paragraph 180 of Plaintiff's Amended Complaint.

181. Defendants deny the allegations contained in paragraph 181 of Plaintiff's Amended Complaint. He had a connection with the ranch but was not an owner.

182. Defendants admit the allegations contained in paragraph 182 of Plaintiff's Amended Complaint.

183. Defendants deny the allegations contained in paragraph 183 of Plaintiff's Amended Complaint.

184. Defendants deny the allegations contained in paragraph 184 of Plaintiff's Amended Complaint.

185. Defendants deny the allegations contained in paragraph 185 of Plaintiff's Amended Complaint.

186. Defendants deny the allegations contained in paragraph 186 of Plaintiff's Amended Complaint.

187. Defendants deny the allegations contained in paragraph 187 of Plaintiff's Amended Complaint. The Debtor's mother who is still a dependent of the Debtor used to live with them.

188. Defendants deny the allegations contained in paragraph 188 of Plaintiff's Amended Complaint.

189. Defendants deny the allegations contained in paragraph 189 of Plaintiff's Amended Complaint.

190. Defendants admit the allegations contained in paragraph 190 of Plaintiff's Amended Complaint.

191. Defendants admit the allegations contained in paragraph 191 of Plaintiff's Amended Complaint.

192. Defendants admit the allegations contained in paragraph 192 of Plaintiff's Amended Complaint.

193. Defendants deny the allegations contained in paragraph 193 of Plaintiff's Amended Complaint.

194. Defendants deny the allegations contained in paragraph 194 of Plaintiff's Amended Complaint.

195. Defendants deny the allegations contained in paragraph 195 of Plaintiff's Amended Complaint.

196. Defendants admit the allegations contained in paragraph 196 of Plaintiff's Amended Complaint.

197. Defendants admit the allegations contained in paragraph 197 of Plaintiff's Amended Complaint.

198. Defendants admit the allegations contained in paragraph 198 of Plaintiff's Amended Complaint.

199. Defendants deny the allegations contained in paragraph 199 of Plaintiff's Amended Complaint.

200. Defendants admit the allegations contained in paragraph 200 of Plaintiff's Amended Complaint.

201. Defendants admit the allegations contained in paragraph 201 of Plaintiff's Amended Complaint.

202. Defendants deny the allegations contained in paragraph 202 of Plaintiff's Amended Complaint. The transcript does not say that.

203. The Plaintiff, Travelers Casualty and Surety Company of America (hereinafter referred to as "Travelers"), a bonding company, filed its complaint herein objecting to the Defendant/Debtors discharge. Its standing to bring the action is predicated upon a bond indemnity agreement (GAI) and rider thereto. Travelers has filed a secured  proof of claim #18 on March 14, 2018, in the amount of $12, 561,301.08. It asserts a blanket lien on personal property. The documentation attached to the claim asserts a lien on all "assets and rights of indemnitors". This is so overly broad and overreaching as to include a lien on all of the debtors' real

and personal property including their exempt property such as their homestead and vehicles in contravention of law. The Defendants assert that the Travelers rider at issue was procured through fraud and/or misrepresentation and is invalid. The defendant debtors dispute the existence, validity, enforceablity and secured nature of the alleged debt to Travelers as asserted in its Proof of Claim which must be contested through an objection to claim by adversary proceeding under Rule 7001 of the Bankruptcy Rules of Procedure. The Defendants have filed a counterclaim to address this issue. If the Court sustains such objection then Travelers lacks standing to bring the instant objection to discharge against the debtor defendants.

204. Steven Wibracht worked for a San Antonio, Texas construction company known as Mapco, Inc. His employment with Mapco, Inc. started in approximately 2006.

205. On or about July 26, 2012, Steven Wibracht purchased a 10% minority interest in Mapco, Inc. Mapco, Inc's Amended Certificate of Formation was filed with the Texas Secretary of State on August 30, 2012, to reflect such ownership interest. He also purchased a 2.5% interest in WPS Group, LLC d/b/a Federal Management Solutions.

206. He then worked for Federal Management Solutions which was a consulting firm which performed consulting services of Mapco, Inc. and others.

207. Travelers demanded that Steven Wibracht as a minority interest owner in Mapco., Inc. and his spouse to sign an indemnity agreement for future surety bonds issued to Mapco, Inc. for future construction projects.

208. In connection therewith, Steven Wibracht at the request of Travelers managing director, Terry W. Nielsen, was told to come to Mr. Nielsen's office at 9601 MacAllister Freeway, San Antonio, Texas to sign documents.

209. On or about April 10, 2013, Mr. Nielsen gave Mr. Wibracht two signature pages for he and his wife Erin to sign. Mr. Wibracht signed the signature page, with no attachments, in the presence of Mr. Nielsen and took the two pages home to his wife to sign. The second signature page contained a place for Mrs. Wibracht to sign. Mrs. Wibracht signed the signature page without meeting or speaking with Mr. Nielsen or receiving any documents from him. Mr. Wibracht then took the two signed pages to work at Mapco, Inc. which two pages were then transmitted to Mr. Nielsen after a notary who worked at Mapco, Inc. had notarized the two pages after they were signed. The Mapco notary knew both Mr. and Mrs. Wibracht and was familiar with their signatures. She did not see them actually sign the two signature pages which had nothing else attached to them, but notarized the signatures because she knew them to be authentic and worked at Mapco, Inc.

210. When Mr. Nielsen gave Steven Wibracht the two signature pages to sign he explained to him that he and his wife's signatures were required by Travelers on an indemnity agreement since they were now owners of Mapco. Mr. Wibracht was further told by Mr. Nielsen that he and his wife needed to sign an indemnity agreement for future surety bonds issued by Travelers for Mapco jobs.

211. Mr. Nielsen never gave Mr. or Mrs. Wibracht a copy of the 2008 Travelers/Mapco General Indemnity Agreement or any rider thereto. Neither Travelers nor its agents provided Mr. or Mrs. Wibracht with copies of such documents.

212.  The Wibrachts did not know the nature and extent of the indemnity obligations which they were to agree by signing the signature pages supplied by Mr. Nielsen as nothing was attached. The Travelers' proof of claim (Claim#18 part 2 pages 75- 78) contains a rider which contains their signature.

213.  Such rider does not contain the written acknowledgment of receipt of the rider and consent to execution by Travelers or its managing director, Terry W. Nielsen.

214.  Upon information and belief, Mr. Nielsen's signatures of acknowledgment and receipt appear on all other riders as to the other defendants in the pending U. S. District Court case.

215.  This is but another indication of the "irregularity" of alleged rider at issue. It is also some evidence or indication of a badge of fraud by Travelers. It also raises the issue "why is this rider different from all other Travelers' riders?"

216.  The Defendants had no meeting of the minds as to the material terms of either the rider at issue or the GAI as they were never shown such documents prior to or contemporaneous with their signing of the two signature pages which were later attached to the rider by Travelers without their knowledge or consent.

216.  Furthermore, there was a lack of consideration for the extreme undisclosed potential liability to Travelers of almost 1 billion dollars (according to Travelers).

217.  During the approximately 90 or so days during which the rider might have been in effect, which the Defendants dispute, they did not have the opportunity to derive any benefit from the rider, or thereafter.

218.    The rider, if effective, is unconscionable and is otherwise unenforceable.

219.    Nevertheless, the first page of the rider was not attached to the signature pages when Defendants signed them. Defendants did not see the first page of the rider until they were sued in United States District Court for breach of the indemnity agreement made the basis of the Travelers's Proof of Claim which agreement they also had not previously seen and to which they had not agreed.

220.    On or about July 9, 2013, Steven Wibracht left his employment with Mapco, Inc./Federal Management Solutions. He was terminated from such employment after voicing his disagreement with company management decisions. He sold his interest in Mapco, Inc. to WPS Group, LLC. This termination and interest sale was approximately ninety (90) days after he and his wife signed the two signature pages which Travelers later attached to the rider made the basis of this lawsuit without their knowledge or consent. Such termination is reflected in the Second Amendment to First Amended and Restated Company Agreement of WPS Group, LLC, effective August 29, 2013.

221.    Upon information and belief, Travelers and its agent Time Insurance, became aware and received copies of termination and transfer of interest and related documents in July, August or September, 2013.

222.    Travelers knowing that Steven Wibracht no longer owned an interest in Mapco, Inc. and no longer worked for the company, filed a Financing Statement bearing his name and the name of his wife, with the Texas Secretary of State listing Travelers as a secured creditor. This was without Defendants' knowledge or consent and is in breach of the parties' agreement, if any. It is also a fraud by Travelers on the Defendants.

223. The Travelers rider at issue makes reference to the GAI. The GAI provides in paragraph 13 thereof, for Travelers to release indemnitors from future liability by advising Travelers of their cessation of ownership in the company. The release according to such paragraph shall take effect 30 days after Travelers receives such notice.

224. The defendants' liability, if any, under the disputed Rider and GAI to Travelers terminated 30 days after Travelers received notice which is approximately August, September or October, 2013.

225. Nevertheless, unknown to the Defendants, Travelers continued to consider them liable for indemnity for Travelers bonds issued thereafter.

226. This represents a breach of the parties' agreement, if any.

227. The Travelers Proof of claim asserts that when the Wibrachts signed the rider they became liable for all past and future surety bond indemnity obligations which total almost one billion dollars most of which were for companies in which neither Mr. or Mrs. Wibracht owned any interest or had any control such as Blackhawk Ventures, LLC and Jamco Ventures, LLC.

228. Travelers has represented to the U.S. District Court in case number 5:15 CV 0200 DAE, U. S. District Court, W.D. Texas, San Antonio Division (D.Ct. ECF #268-13, filed 4/30/18) that over $14,000,000.00 of the bond losses were related to Blackhawk Ventures, LLC and Jamco Ventures, LLC and Core Logistics. A true copy of such document is attached hereto marked as Exhibit "A" and is incorporated by reference herein.

229. On July 9, 2013, Steven Wibracht was terminated as an employee of Mapco, Inc. and FMS by its majority shareholder, Michael Padron.

24

230.   Steven Wibracht and Mapco and FMS signed a separation agreement on August 29, 2013.   The document provided that Steven Wibracht and Erin Wibracht were to be released from any and all indemnity obligations to Travelers.

231.   At or about such time, Travelers and its agent Time Insurance were furnished  copies of such separation agreement which put them on notice that Steven Wibracht and Erin Wibracht were terminating any future Travelers bond indemnity obligations.

232.   Nevertheless, Travelers, knowing that the Wibrachts had terminated their indemnity obligations to Travelers, continued to hold them liable not only for future (post separation agreement)  Mapco, FMS bonded projects but also for indemnity for future bonded projects for Blackhawk Ventures, LLC and Jamco Ventures, LLC which was beyond the scope of what the Travelers managing agent, Mr. Terry W. Nielsen had told Mr. Wibracht to induce him to sign the signature page and have his wife sign a similar signature page with no indemnity agreement or rider attached.

233.   Had Mr. Nielsen on behalf of Travelers made full disclosure of the material terms of the rider to which their signatures were attached and that they might be liable for almost a billion dollars worth of indemnity claims and were undertaking indemnity obligations for other companies for which they did not work and in which they had no interest, they never would have signed the signature pages or agreed in principal to indemnify Travelers.   This was a misrepresentation by omission and actual false representation and/or fraud by Travelers which induced the Wibrachts to sign the signature pages with no documents attached.   They relied upon Mr. Nielsen's representations to their detriment because Mr. Wibracht trusted

him and believed his representations which Mr. Nielsen knew or should have known were false when he made them and expected the Wibrachts to rely upon the same which they did to their detriment and damage.

234. On March 17, 2015, Travelers filed a lawsuit against Michael Padron, the Debtor/Defendants herein and many others in the United States District Court for the Western District of Texas, San Antonio Division in case number 5:15 CV 200 DAE. The lawsuit seeks to recover damages under the 2008 GAI and various indemnity riders including the disputed rider to which the Defendants' signatures were attached.

235. That lawsuit was stayed as to the Defendants when they filed the underlying Chapter 7 proceeding herein on September 30, 2017.

236. Travelers filed a secured Proof of Claim #18 on March 14, 2018 in the amount of $12,561,301.08.

237. Travelers is strictly (vicariously) as well as jointly and severally liable for the misconduct and resulting damages of its managers, directors and agents (and/or independent contractors). *See MBank El Paso, N. A. v. Sanchez,* 836 S.W.2d 151 (Tex. 1992).

238. The Defendants have sustained damages by virtue of the Plaintiff's misconduct set forth above.

239. The circumstances of the Plaintiff's misconduct described above indicates that it was willful and/or malicious or made with reckless disregard for the Defendants' rights entitling them to a claim for punitive damages.

26

240. The Defendants have claims against Travelers. Because the Defendants have claims against Plaintiff, Travelers, Travelers' secured claim (described above) must be disallowed pursuant to 11 U.S.C. § 502(d). Because of its misconduct its lien should be avoided and debt cancelled. To the extent not cancelled the Defendants are entitled to setoff or recoupment of their claims and damages against Travelers pursuant to 11 U.S.C. §553. The claim should be otherwise determined to be unsecured pursuant to 11 U.S.C. §§506, 544 and 28 U.S.C. §§2201-2202.

241. The Travelers claim, is based upon a General Indemnity Agreement (GAI) dated September 16, 2008, which was not signed by the Defendants. The terms of that agreement were not disclosed to the Defendants and copies not provided to them prior to them being sued in U. S. District Court by Travelers. Defendants did not agree to the terms of such GAI.

242. The Travelers' claim is also based on Defendants' alleged execution of a rider to such GAI dated April 10, 2013. The execution of rider was procured through misrepresentation and fraud of Travelers. The Defendants signed two signature pages without the rider or any language describing its contents. The signed signature pages were later delivered to a notary, Roxanne Hensley, who notarized their signatures in their absence without any attachments. The notary has confirmed this by her attached Declaration marked as Exhibit "C" which is incorporated by reference herein. A contract procured through fraud is unenforceable and is null and void. Such is the case here. This too deprives the Plaintiff of standing to bring this action.

243.  Mr. Terry W. Nielsen, managing director of Travelers, met with Defendant Steven Wibracht and several other persons in his office (The Travelers Building located at 9601 MacAllister Freeway, San Antonio, Texas) on or about April 10, 2013.  Defendant, Erin Michelle Wibracht, wife of Defendant, Steven Wibracht was not present.  Mr. Nielsen gave Defendant, Steven Wibracht the two signature pages for he and his wife to sign without any attachments after telling him that since he and his wife were now part owners in Mapco, that they were required to sign an indemnity agreement rider to cover new surety bonds which Travelers would in the future provide to Mapco.  He never told Steven Wibracht or his wife the terms of the rider which Travelers later apparently attached to the two signature pages signed by he and his wife or the terms of the GAI signed by others years earlier.  Mr. Nielsen did not disclose to the Defendants that by signing the rider signature pages that they might be liable to Travelers for almost 1 Billion Dollars in potential claims or that they were giving Travelers a security interest or lien on any of their property.  Mr. Nielsen did not tell either defendant that by signing the signature pages they would be liable for all past bonds covered by the GAI no matter how long before.  Mr. Nielsen did not tell either defendant that by signing the rider signature pages that they would be liable to Travelers for indemnity for past, present and future surety bonds issued by Travelers to third parties unrelated to Mapco such as Blackhawk Ventures, LLC.  Mr. Steven Wibracht related what Mr. Nielsen had told him about the indemnity and the signature requirement to his wife, Erin Wibracht,  before he had her sign the signature page with no documents attached.

244.    When Mr. Terry W. Nielsen, managing director of Travelers made the aforesaid representations to Defendant Steven Wibracht, he knew they were false or should have known they were false but made the representations with reckless indifference or reckless disregard for the Defendants' rights.  He expected both Defendants to rely upon them which they did to their detriment and damage.  Mr. Nielsen's representations and misrepresentations were made in the scope and course and with the authority of his employer Travelers which is bound by his representations through respondeat superior.  Travelers is accordingly bound by his representations and misrepresentations in this regard.

245.    There is no contract to support the Travelers claim as some or all of the elements of a contract are missing.  There was no meeting of the minds or mutual assent by the Defendants on all of the material elements of an indemnity agreement when they signed the two signature pages with no agreement stating any terms was attached.

246.    The Travelers' claim is filed as secured.  The Defendants did not sign a security agreement or agree to pledge any of their property to Travelers.  The rider does not contain a security agreement.  On January 27, 2015, Travelers filed a UCC financing statement form with the Texas Secretary of State asserting a lien on the Defendants' property.  The filing number is 15-0002823506.  The UCC financing statement was filed without the Defendants knowledge or consent.  Travelers attached a copy of the Defendants' signature pages with a rider in favor of Travelers, previously unseen by them to the financing statement.  That rider is unenforceable as it was obtained by fraud in the inducement, fraud and by misrepresentation.  The financing statement and any alleged liens claimed upon the Defendants' property are

29

unauthorized and null and void for the same reasons. Such liens are unenforceable as to their exempt homestead and personal property under Art. 16, Section 50, of the Texas Constitution and the Sections 41 and 42 of the Texas Property Code as well as the Texas Uniform Commercial Code.

247. To the extent the rider at issue is found to be enforceable, the Defendants contend that Travelers' breached its GAI agreement incorporated in the rider by not releasing the Defendants from indemnity obligations on future bonds after Travelers received written notice. By failing to release the defendants from future bond liability, Travelers breached its own contract and is barred from claiming thereunder. The Defendants have been damaged by such breach and are entitled to recover damages and attorney's fees of and from Travelers pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code. This too deprives the Plaintiff of standing.

248. In addition to its principal amount, the claim includes attorney's fees and other charges of over $2,000,000.00, which the claimant has failed to itemize and file with its proof of claim as required by Bankruptcy Rule of Procedure 3001 (c)(2)(A).

249. The Defendants/Debtors dispute the Travelers' debt. They and their estate hold the claims against the claimant set forth above which warrant the denial of the claim under 11 U.S.C. §502(d) and/or offset under §553. Accordingly, they do not owe the claimant and its claims should be disallowed and lien ordered released and debt satisfied.

250. The Travelers claim is unenforceable against the Defendants/Debtors and their estate under applicable law pursuant to 11 U.S.C. §502(b)(1).

251.   The claim is excessive, fraudulent,  and constitutes a false statement made under penalty or perjury.

252.   The claim represents an excessive demand warranting the denial of pre and post-judgment attorney's fees.

253.   Upon information and belief the underlying bonds are unenforceable and may not be the subject of indemnity due to charging excessive premiums and the payment in the form of rebates to unlicensed persons by Travelers' agent of record Time Insurance and by improper payments of dividends checks to third parties who diverted them from the rightful owners.

254.   The Defendants received no consideration for the issuance of surety bonds by Travelers to companies other than the one which they briefly owned an interest in, Mapco, Inc.  The issuance of the bonds made the basis of the claim did not benefit the Defendants.

255.   Travelers' claim is for a breach of an indemnity agreement.   Under Texas law, a breach of indemnity agreement claim has five elements: (1) a contractual indemnity agreement exists; (2) the agreement obligates defendants to indemnify the surety if claims are made on the bonds issued; (3) claims were made on the bonds issued; (4) all conditions precedent for recovery have occurred, been performed, waived or excused; and (5) the surety has been damaged. *Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 719 (5th Cir. 1995).*

256.  Each of the five elements is missing in this case.   There is no contractual indemnity agreement because there was no meeting of the minds or mutual assent on its material terms.

257.    The Defendants merely signed two signature pages in reliance upon what the Travelers' representative (Mr. Nielsen) told Mr. Wibracht that they were agreeing to.  That is by signing the signature pages they were agreeing to indemnify Travelers for new surety bonds issued by Travelers for Mapco, Inc. the company in which they had just acquired a minority interest.  There was no agreement to provide collateral.  There was no agreement to indemnify Travelers for existing surety bonds. There was no agreement to indemnify Travelers for any of the bond claims made the basis of the proof of claim.  There  was no agreement to indemnify Travelers for damages for defaulted surety bonds on projects for companies other than Mapco's jobs such as those by jobs by Blackhawk, Jamco or Core.  There was no agreement to be bound by the terms of the 2008 General Indemnity Agreement whose terms were not disclosed to the Wibrachts. There was no authorization given to file a Financing Statement with the Texas Secretary of State.  All conditions precedent for Travelers to bring the claim have not occurred.

258.    The bond claims made the basis of Travelers' claim as set forth in the loss summary which Travelers filed in the U.S. District Court case No. 5:15 cv 00200 DAE on  April 30, 2018, (Ecf. #268-13), *the month after it filed its proof of claim* at issue, indicates  that the indemnity claim arises from bonds provided for Blackhawk Ventures, LLC, Jamco, and one for Core Constructors for a total of $14,834,408.35 as set forth in the attached Exhibit "A".

259.  By such filing in the U. S. District Court (Ecf #268-13) the Plaintiff, Travelers has judicially admitted that none of the alleged contractual indemnity claims at issue were for Mapco, Inc.

260.    The Defendants contend that such claims and losses, if any, by Travelers were outside the scope of their agreement to indemnify Travelers for losses due to future Mapco, Inc. Travelers' surety bonds. Travelers did not sustain any losses for indemnity claims covered by what the Defendants intended by signing their names to the two signature pages at issue to which Travelers later attached the rider at issue which they had never before seen or agreed.

261.    In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *Bendalin v. Delgado,* 406 S.W.2d 897, 899 (Tex.1966); *University Nat'l Bank v. Ernst & Whinney, 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ).* By signing two signature pages with nothing attached there is clearly no definite agreement between the parties specifying what the Defendants agreed to undertake when they signed those two pages.

262.    The material terms of the contract must be agreed upon before a court can enforce the contract. Where an essential term is open for future negotiation, there is no binding contract. *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 644 (Tex.App.—Corpus Christi 1984, no writ) and *T. O. Stanley Boot Co., Inc. v. The Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992).* Such is the case at bar. Since the material terms were not agreed, the indemnity agreement is void for vagueness and is unenforceable. Claims under such invalid agreement such as the Proof of Claim at issue are also unenforceable and should be denied.

263.    Texas law provides that the omission or failure of an essential element of a contract vitiates the whole. *Mesa Petroleum Co. v. Coniglio,* 629 F.2d 1022, 1026 (5th Cir.1980); *Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147, 150*

33

*(Tex.Comm.App.1937, opinion adopted)*; *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 644 (Tex.App.1984, no writ).

264.   Since the alleged indemnity agreement between the parties lacks the essential elements set forth above, the absence of such elements vitiates the contract as a whole, if one ever existed.

265.   A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. See *Associated Indemnity Corporation v. CAT Contracting, Inc.;Trevino v. Allstate Ins. Co., 651 S.W.2d 8, 11 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); City of San Antonio v. Guido Bros. Const. Co., 460 S.W.2d 155, 162–63* (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.). Here Travelers has not met its burden.

266.   Defendants contend that they did not know they were signing a contract, and so they lacked the mutual assent required to form a valid contract.

267.   Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, 960 S.W.2d 41, 46 (Tex. 1998).* This type of fraud, also called fraudulent inducement, has the same elements as a fraud claim, with the added requirement that the fraud relate to an agreement between the parties. *Haase v. Glazner, 62 S.W.3d 795, 798–99 (Tex. 2001).*

268.   The elements of fraud are a material misrepresentation that was false, was either known to be false when made or was made without knowledge of its truth, was intended to be acted upon, was relied upon, and caused injury." *Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex. 1994) (per curiam).*

269. When Mr. Nielsen told Defendant Wibracht that he and his wife would, by signing the signature pages he presented to Mr. Wibracht in his office on or about April 10, 2013, be agreeing to indemnify Travelers for future Travelers bonds issued for Mapco, Inc. jobs, such representation was false. He on behalf of Travelers knew the same to be both material and false and expected the Wibrachts to rely upon such misrepresentation. He expected the Wibrachts to rely upon such representation, which they did in signing the signature pages to be returned to Travelers to their detriment and damage. They are now being sued for $12,561,301.08 (the claim), as a result of Travelers fraud and have incurred significant attorneys' fees and other damages as a proximate result of such fraud.

270. The Texas Supreme Court has clearly ruled that an excessive demand warrants the denial of attorney's fees and interest. *Findlay v. Cave*, 611 S.W.2d 57 (Tex. 1981). The dispositive inquiry for determining whether a demand is excessive is whether the claimant acted unreasonably or in bad faith. *Allstate Ins. Co. v. Lincoln*, 976 S.W.2d 873, 876 (Tex.App.-Waco 1998, no pet.). Application of this rule is limited to situations where the creditor refuses a tender of the amount actually due or indicates clearly to the debtor that such a tender would be refused. *Findlay*, at 58, *Id*. The claimant clearly has made an excessive demand which warrants the denial of all attorney's fees and interest. There is no debt.

271. The claim does not comply with the mandatory requirements of Rule 3001 of the Bankruptcy Rules of Procedure including but not limited to a full itemization of all charges claimed and proof of perfection of the claimant's alleged security interest and the underlying security agreement.

272.   Because the claimant failed to provide the detailed breakdown of attorney's fees, fees and costs required by Bankruptcy Rule of Procedure 3001c, the Court should preclude Travelers from presenting the omitted information, in any form, as evidence in this adversary proceeding and award to the Defendants expenses and attorney's fees caused by the failure, including the cost of litigating their objections to Plaintiff's claims.

273.   The Travelers' claim, due to its defects set forth above, is not entitled to prima facie validity.

274.   The Defendants by way of counterclaim, have requested that the claim should be disallowed pursuant to Local Court Rule 3007, Rule 3007 of the Bankruptcy Rules of Procedure and 11 U.S.C. §502(b).

WHEREFORE, PREMISES CONSIDERED, the Defendants pray that the Plaintiff take nothing and for such other and further relief to which Defendants may be entitled.

Dated: 12 October, 2018.

Respectfully submitted,

LAW OFFICES OF MARTIN SEIDLER
One Elm Place, Suite E504
11107 Wurzbach Road
San Antonio, Texas  78230
Tel:  (210) 694-0300
Fax:  (210) 690-9886
Email: marty@seidlerlaw.com

By:_____/s/_____
    MARTIN SEIDLER, #18000800
    ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was transmitted by email on this 12th day of October, 2018, to each of the persons set forth below:

Jennifer Larkin Kneeland
WATT TIEDER HOFFAR & FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Email: jkneeland@watttieder.com

Thomas Rice
Randy Pulman
PULMAN, CAPPUCCIO, PULLEN
BENSON & JONES, LLP
2161 NW Military Hwy, Suite 400
San Antonio, Texas 78213
Email: trice@pulmanlaw.com
Email: rpulman@pulmanlaw.com

/s/
Martin Seidler

## Incurred Loss Summary Schedule (As of 03/31/2018)

Page 1 of 1

| EXHIBIT / BOND ID No. (A) | Principal (B) | Bond Date (C) | Bond Number | Claim No(s). (D) | Bond Claims Paid (+) Interest (E) | Expenses Incurred (+) Interest (F) | Subrogation Applied to Loss (G) | Total Incurred (E)+(F)-(G) (H) |
|---|---|---|---|---|---|---|---|---|
| 1 | Blackhawk Ventures, LLC | 03/22/2012 | 105744675 | T1303206 | $119,978.45 | $23,088.32 | | $143,066.77 |
| 2 | Blackhawk Ventures, LLC | 03/28/2012 | 105744676 | T1303207 | $281,206.18 | $54,114.53 | | $335,320.71 |
| 3 | Blackhawk JAMCO A SDVOB | 04/04/2012 | 105744678 | T1411955 | $4,907,798.62 | $944,443.79 | $427,887.41 | $5,424,355.00 |
| 4 | Blackhawk JAMCO A SDVOB | 04/04/2012 | 105744678 | T1311292 | $366,052.05 | $70,442.04 | | $436,494.09 |
| 5 | Jamco Ventures, LLC | 08/08/2012 | 105861168 | T1406041 | | | | $0.00 |
| 6 | Blackhawk Ventures, LLC | 09/27/2012 | 105883825 | T1317231 | $1,014,030.82 | $187,248.42 | $223,281.98 | $977,997.26 |
| 7 | Core Constructors | 12/20/2012 | 105866625 | T1505909 | $71,718.43 | $36,033.56 | | $107,751.99 |
| 8 | Blackhawk Ventures, LLC | 04/15/2013 | 105901378 | T1409975 | $2,485,018.05 | $480,134.32 | | $2,965,152.37 |
| 9 | Blackhawk Ventures, LLC | 08/13/2013 | 105905909 | T1410825 | $91,586.24 | $46,500.77 | | $138,087.01 |
| 10 | Blackhawk Ventures, LLC | 09/25/2013 | 105383053 | T1610344 | $69,308.38 | $46,754.32 | | $116,062.70 |
| 11 | Blackhawk Ventures, LLC | 03/28/2014 | 106080038 | T1610853 | $98,138.82 | $40,930.61 | | $139,069.43 |
| 12 | Blackhawk Ventures, LLC | 05/16/2014 | 108082076 | T1510354 | $33,067.74 | $16,824.19 | | $49,891.93 |
| 13 | Blackhawk Ventures, LLC | 08/04/2014 | 100097300 | T1610356 | $24,766.06 | $12,600.61 | | $37,366.67 |
| 14 | Blackhawk Ventures, LLC | 08/12/2014 | 106147083 | T1608378. | $64,281.50 | $32,895.33 | | $97,176.83 |
| 15 | Blackhawk Ventures, LLC | 09/26/2014 | 106161075 | T1608378. | $19,909.44 | $10,129.64 | | $30,039.08 |
| 16 | Blackhawk Ventures, LLC | 09/26/2014 | 106162084 | T1610827 | $107,109.99 | $54,496.03 | | $161,606.02 |
| 17 | Blackhawk Ventures, LLC | 10/01/2014 | 105586052 | T1619155 | $363,344.38 | $184,864.41 | | $548,208.79 |
| 18 | Blackhawk Ventures, LLC | 10/01/2014 | 106162173 | T1608603 | $290,602.01 | $147,854.13 | | $438,456.14 |
| 19 | Blackhawk Ventures, LLC | 10/23/2014 | 106162197 | T1610359 | $90,046.41 | $45,814.32 | | $135,860.73 |
| 20 | Blackhawk Ventures, LLC | 01/08/2015 | 106162224 | T1611062 | $96,039.79 | $48,863.67 | | $144,903.46 |
| 21 | Blackhawk Ventures, LLC | 02/02/2015 | 106162233 | T1611932 | $50,006.58 | $25,442.53 | | $75,449.11 |
| 22 | Blackhawk Ventures, LLC | 02/15/2015 | 106162236 | T1607953 | $54,964.89 | $27,965.35 | | $82,930.24 |
| 23 | Blackhawk Ventures, LLC | 03/03/2015 | 106162239 | T1607983 | $84,410.83 | $42,947.02 | | $127,357.85 |
| 24 | Blackhawk Ventures, LLC | 09/20/2015 | 106162045 | T1610938 | $49,729.90 | $25,301.86 | | $75,031.76 |
| 25 | Blackhawk Ventures, LLC | 04/08/2015 | 106162250 | T1610269 | $9,217.68 | $4,689.82 | | $13,907.50 |
| 26 | Blackhawk Ventures, LLC | 04/07/2015 | 106162252 | T1610442 | $123,223.97 | $62,694.59 | | $185,918.56 |
| 27 | Blackhawk Ventures, LLC | 04/07/2015 | 106162280 | T1610639 | $52,466.05 | $26,693.97 | | $79,160.02 |
| 28 | Blackhawk Ventures, LLC | 04/07/2015 | 106162258 | T1610838 | $47,152.91 | $23,990.72 | | $71,143.63 |
| 29 | Blackhawk Ventures, LLC | 04/07/2015 | 106162269 | T1610924 | $82,758.32 | $47,177.31 | | $139,902.63 |
| 30 | Blackhawk Ventures, LLC | 05/12/2015 | 106162266 | T1610802 | $28,163.15 | $14,329.01 | | $42,492.16 |
| 31 | Blackhawk Ventures, LLC | 05/22/2015 | 106162277 | T1604004 | $34,284.55 | $17,433.31 | | $51,717.86 |
| 32 | Blackhawk Ventures, LLC | 05/29/2015 | 106162280 | T1607501 | $510,733.23 | $259,853.74 | | $770,586.97 |
| 33 | Blackhawk Ventures, LLC | 05/29/2015 | 106182280 | T1607004 | $88,775.38 | $45,167.64 | | $133,943.02 |
| 34 | Blackhawk Ventures, LLC | 08/24/2015 | 106162296 | T1608020 / T1610278 | $226,840.98 | $115,413.44 | | $342,254.42 |
| | | | | | $12,043,704.00 | $3,241,873.74 | $651,169.39 | $14,634,408.35 |



EXHIBIT

'A'

## DECLARATION OF ROXANNE HENSLEY

STATE OF TEXAS      §

COUNTY OF BEXAR    §

    My name is Roxanne Hensley. I am over 21 years of age. My address is 316 Quail Run, Lavernia, Texas 78121. I have personal knowledge of the facts and matters set forth herein based upon my involvement and participation in the same and they are true and correct.

    I am a Texas Notary Public and was so on April 10, 2013.

    On April 10, 2013, I notarized the signatures of Fameeda Taylor, Steven Wibracht, Erin Michelle Wibracht and Raymond Jenkins, on the attached two pages, and affixed my notary seal to and signed each acknowledgment as a Texas Notary Public. I knew each of the signers and was familiar with their signatures. I had no reason to doubt the authenticity of their signatures even though they were not present when I signed each acknowledgement. I did not see any of them sign in my presence. When I signed the the acknowledgement for each of the four signers, their signatures appeared on one page of the two pages only. There were no other documents or pages attached to the two signature pages that I signed. True copies of such two pages are attached hereto.

    This concludes my statement.

    I declare under penalty of perjury pursuant to Sec. 132.001. UNSWORN DECLARATION of the Texas Civil Practice and Remedies Code that the foregoing is true and correct.

    Executed in San Antonio, Bexar County, Texas on this 10th day of September, 2018.

                            Roxanne Hensley



EXHIBIT
"C"

If Indemnitor an Individual, sign below:

_____   April 10.2013    422 Blue Springs
Indemnitor – Individual   (signature)    Month/Day/Year   San Antonio, TX 78260
                                                    Address

Fameeda Taylor                          SS#
Indemnitor – Individual   (print or type)

ACKNOWLEDGEMENT
STATE OF TEXAS          County of BEXAR
On this 10 day of April , 2013 before me personally appeared FAMEEDA TAYLOR of the address shown above, known or proven
to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN
WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
                                    Notary Public   (signature)

ROXANNE HENSLEY              Roxanne Hensley
Notary Public  State of Texas      Notary Public   (print or type)
My Comm. Exp. June 16, 2014
                              Notary Public residing at: 316 Quail Run
                                    La Vernia, TX 78121

                              Commission expires:  June 16, 2014

---

If Indemnitor an Individual, sign below:

_____   April 10 2013   638 E. Borgfield Rd
Indemnitor – Individual   (signature)    Month/Day/Year   San Antonio, TX 78260
                                                    Address

Steven B. Wibracht                      SS#
Indemnitor – Individual   (print or type)

ACKNOWLEDGEMENT
STATE OF TEXAS          County of BEXAR
On this 10 day of April , 2013 before me personally appeared STEVEN WIBRACHT of the address shown above, known or proven
to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN
WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
                                    Notary Public   (signature)

ROXANNE HENSLEY              Roxanne Hensley
Notary Public  State of Texas      Notary Public   (print or type)
My Comm. Exp. June 16, 2014
                              Notary Public residing at: 316 Quail Run
                                    La Vernia, TX 78121

                              Commission expires:  June 16, 2014

Page 2 of 4

Additional Indemnitor Rider 8-2004

If Indemnitor an Individual, sign below:

_C. Michelle Wibracht_  (signature)          _April 10, 2013_          538 E. Borgfield Rd.
Indemnitor – Individual                      Month/Day/Year            San Antonio, TX 78260
                                                                        Address

Erin Michelle Wibracht
Indemnitor – Individual    (print or type)                             SS#

ACKNOWLEDGEMENT
STATE OF ~~TEXAS~~        County of ~~BEXAR~~
On this _10_ day of _April_ _2013_, before me personally appeared _Erin Michelle Wibracht_ (the address shown above, known or proven
to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN
WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                              _Roxanne Hensley_
                                              Notary Public          (Signature)

                                              _Roxanne Hensley_
                                              Notary Public          (print or type)

ROXANNE HENSLEY
Notary Public · State of Texas
My Comm. Exp. June 16, 2014

                    Notary Public residing at: _316 Quail Run_
                                                _La Vernia, TX 78121_

                    Commission expires: _June 16, 2014_

---

If Indemnitor an Individual, sign below:

_[signature]_  (signature)                   _April 10, 2013_          260 Rainbow Dr.
Indemnitor – Individual                      Month/Day/Year            Lakehills, TX 78063
                                                                        Address

Raymond Jenkins
Indemnitor – Individual    (print or type)                             SS#

ACKNOWLEDGEMENT
STATE OF ~~TEXAS~~        County of ~~BEXAR~~
On this _10_ day of _April_ _2013_, before me personally appeared _Raymond Jenkins_ (the address shown above, known or proven
to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN
WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                              _Roxanne Hensley_
                                              Notary Public          (Signature)

                                              _Roxanne Hensley_
                                              Notary Public          (print or type)

ROXANNE HENSLEY
Notary Public · State of Texas
My Comm. Exp. June 16, 2014

                    Notary Public residing at: _316 Quail Run_
                                                _La Vernia, TX 78121_

                    Commission expires: _June 16, 2014_

Additional Indemnitor Rider 8-2004                                    Page 3 of 4